## THE MEDICAL INSTITUTION OF GENEVA COLLEGE *vs.* PATTERSON.

"The Medical Institution of Geneva College" is not a corporation, and therefore has not the capacity to maintain a suit in a court of justice.

Neither Columbia College, nor any of the colleges of this state, incorporated by the regents of the university, have the power to create any other body politic or corporate.

ASSUMPSIT, tried before GRIDLEY, C. Judge, at the Oneida circuit in September, 1843, when the jury found a special verdict. The action was on a note made by the defendant on the 5th of October, 1841, for $62, payable one year after date with interest to "The Medical Institution of Geneva College." The college was incorporated by the regents of the university, on the 18th of February, 1825, by the name of "The Trustees of Geneva College." On the 15th of September, 1834, the trustees passed several statutes, which were called "Statutes · of the trustees of Geneva College for the formation of a Medical Faculty thereof, to be denominated, *The Medical Institution of Geneva College.*" The statutes provided, among other things, that there should be "a Medical Faculty of this College," to consist of not less than four, nor more than eight professors, who should hold their appointments or offices at the pleasure of the trustees of the college ; but no one was to be removed without the consent of a majority of the medical professors. The statutes also provided for a dean and register of the faculty, to be elected by the professors. Six professorships were established, and a professor appointed to each. These statutes were afterwards amended, and several acts of the legislature were passed relating to the medical faculty of the college. The only question made by the special verdict was, whether the plaintiffs were a corporation.

*H. Spencer*, for the plaintiffs. The English universities have possessed and exercised the power of creating corporations called

colleges for giving instruction in the liberal arts and sciences. This power is conferred by parliament, or the crown, by their charters. The university of Oxford, in particular, has power by charter to erect corporations, which it has often exercised in creating companies of *tradesmen.* (1 *Black. Com.* 474; 1 *Kid on Corp.* 50.)   Clare Hall was founded by the chancellor of the university of Cambridge in 1236. (3 *Adolphus' State of the Br. Empire,* 46.)

It was formerly supposed that the king could only create a corporation by a direct and immediate act; but it has now been long settled that he may grant a license to a subject to create a particular corporation, and that he may, by charter, also confer a general power to erect corporations, indefinitely. (1 *Kid on Corp. sup.*)

That the power to create corporations is incident to a university, is inferrible from the acts of 1784 and 1787, creating the university of New-York. (1 *Greenl.* 434; 2 *K. & R.* 233; 2 *R. L.* 260.)   That body has nothing to do *directly* in the business of education, and exists mainly for the purpose of creating colleges, and exercising a supervision over them and their officers.

In the English universities, there are two classes of corporations, the universities themselves, and the several colleges. Oxford has twenty colleges and five halls, and Cambridge has seventeen colleges and halls, and each separate college is a body corporate, governed by its own officers, subject to the general authority of the university. (*Camb. Cal.* 1835, *p.* 1; *Oxford Cal.* 1835, *p.* 1.)

Our general acts authorizing the creation of manufacturing and other corporations, furnish similar examples of this mode of creating corporations.

No particular form of words need be used in creating a corporation. (*Thomas* v. *Dakin,* 22 *Wend.* 9, *per Cowen, J. at p.* 94; *Denton* v. *Jackson,* 2 *John. Ch. R.* 320, 324, 5; 6 *Vin. Abr.* 262, *Corporation F.*)   It is not necessary that the body created should be called a *corporation* in the act. (*Thomas* v. *Dakin, sup.*)   A grant of land, by the crown, to the good men of Islington, rendering rent, makes them a corporation, though

without words of perpetuity. (1 *Dyer*, 100, *case* 70; *Russel* v. *The Men of Devon*, 2 *Term Rep.* 672; *Jac. Law Dic. Corporation.*)

No particular form of words is requisite in the *license* to create corporations. It is enough that the powers authorized to be conferred form the essential attributes of a corporation. (*Kid ut sup.*) And the instrument in execution of the power need not in express words declare the institution created to be a corporation. (2 *H.* 7, *pl.* 13, *a. b, cited in Sutton Hospital case,* 10 *Co.* 27, 28.)

Perpetual succession is the distinguishing feature of a corporation. (*Thomas* v. *Dakin, sup. per Nelson, C. J. at p.* 71, 72, *per Cowen, J. at p.* 100; *Dartmouth College* v. *Woodward,* 4 *Wheat.* 636.)

It is not necessary in the grant of a corporation that the corporators should be named. It is enough if their appointment in future is provided for. (10 *Co. sup.*)

One or more corporations may be constituted out of another. (10 *Co.* 31–6; 6 *Vin. Ab.* 260, *Corp. C.* 1; *Bac. Abr. Corp. B.;* 1 *Black. Comm.* 474, *note* 2.)

It is not essential that the *name* should be given in the grant of a corporation. (3 *Salk.* 102; *Ld Ray.* 681, *S. C.*)

It may be said that the authorities referred to, respecting the English universities, only shew that these bodies can create corporations of *tradesmen.* It is true that many of the colleges in the universities have received charters directly from the crown; but there are others, which do not appear to have been thus created, and as to these, we insist that they were erected by the universities, pursuant to the power vested in them; and if they can incorporate a company of tradesmen, *a fortiori,* they have power to erect a college, which is an institution more nearly connected with the business for which the universities were themselves established. The fact that many of the colleges received a charter of incorporation, does not prove that they were not before incorporated. The universities themselves were incorporated by act of parliament as late as the reign of Elizabeth; (2 *Stat. at Large,* 603, 13 *Eliz. ch.* 29;) but they

existed as bodies corporate for centuries before. These acts were in effect, *confirmations,* sought for and obtained by the universities and colleges to protect their rights against apprehended encroachments from arbitrary monarchs and parliaments. (3 *Adolph. State Br. Emp.* 1, 23, 34, 46.)

The charter of Columbia college confers upon that institution the same powers possessed by any of the universities of England. (*Charter of Col. Coll. An.* 1754, *pamph. pp.* 17, 18, 20, 21, 22.) In 1787, the legislature passed an act, in effect, confirming the power of Columbia college under its charter, and also, among other things, providing that the regents of the university should be authorized to erect colleges, *which should possess all the powers of Columbia college, under that act.* (2 *K. & R.* 336, §§ 7, 8; 2 *R. L. of* 1813, *p.* 262, § 6.) Under this authority the regents, in 1825, granted to Geneva college their charter of incorporation, and that institution thereupon, by force of the statute referred to, became entitled to and vested with all the powers possessed by Columbia college as an university or otherwise. Geneva college can therefore, in the legitimate exercise of its university powers, establish at the place where located, and not elsewhere, (5 *Wend.* 211,) not only a college of arts and sciences, but also separate colleges of theology, of law and of medicine; and such colleges, when established and endowed, are corporations : and it necessarily follows that " The Medical Institution of Geneva College," as established by and under the statutes of the trustees of Geneva college set out in the special verdict, is a corporation. Those statutes confer all the essential features of a corporation upon the principles before referred to.

An examination of the general laws of the state will also show that the plaintiffs, by force of the matters above referred to, have become a corporation. (1 *R. S.* 460, § 36, *subd.* 8, 11.) By a fair construction of these provisions, the trustees of colleges may contract with their officers respecting the tenure of their offices, and may provide for their succession and perpetuity, as was done in this case, by the statutes set out in the

special verdict, and this constitutes a corporation. (*Dartmouth College* v. *Woodward*, 4 *Wheat.* 703, *per Story, J.*)

The medical faculty of Geneva College has been repeatedly recognized by the legislature as an incorporated college of medicine. (*Laws of* 1835, *p.* 36.) The plaintiffs are here spoken of as an incorporated medical college. In *The People* v. *The State Medical Society*, (18 *Wend.* 539,) in which it was held that Geneva College was not a medical college, the facts appearing upon this special verdict were not shown to exist. By *Laws of* 1836, *p.* 579, the medical faculty of Geneva College are treated as a separate, distinct and independent body, and are impliedly authorized to make contracts relating to the subjects mentioned in that act. By an act of the same session, *p.* 801, § 3, this faculty is again recognized as having an independent existence, and is authorized to appoint a representative in the state medical society, with the same powers possessed by delegates from the medical colleges. (*Laws of* 1841, *p.* 205, §§ 1, 2, 3.) By this statute this faculty is endowed, by the state, by the name of "The Medical Institution of Geneva College," and has duties devolved upon it which require, for their exercise, perpetual succession, and all the essential attributes of a corporation. *Laws of* 1844, *p.* 413, leads to the same conclusion; and as this last act was passed by a two-third vote, and recognizes and adopts the provisions of the other acts referred to, no objection can be raised out of the constitutional provision relating to the manner of passing laws creating or altering bodies politic and corporate.

If the faculty did not exist as a corporation, independently of these statutes, it is submitted that within the adjudged cases, it was, by force of those enactments, created a corporation by *implication.*

*A. Worden,* for the defendant. There is no power vested in the trustees of Geneva College to · create a corporation. (1 *Greenl. Laws,* 434; 2 *R. L. of* 1813, *p.* 260; 1 *Black. Comm.* 472, 474; 4 *Co. Rep.* 107, 108.)

The statutes of the trustees, set out in the special verdict, do

The Medical Institution of Geneva College v. Patterson.

not purport to create a corporation, and the acts of the legisla-ture referred to, do not recognize it as such.

In England, corporations can only be created in two ways, (1) by act of parliament; (2) by royal charter. The chancel-lor of the university of Oxford acts in creating corporations by special delegation from the king. The charter of Kings (now Columbia) College was granted by Lt. Gov. De Lancy, who had himself only a delegated authority, and could not grant to oth-ers any portion of the royal prerogative. But granting that the trustees of Kings College enjoyed a portion of ·the king's pre-rogative, it was abrogated by the revolution, and the act of 1787 referred to, does not profess to reinvest them with that power. The plaintiffs, as officers of the corporation of Geneva College, have certain political rights; but they are held under, and in subordination to, the principal body. Their legal con-dition is admitted to be different from that of mere servants of the corporation, but they have no existence separate from, and independent of, the corporation to which ·they are incident. The president and board of directors of a banking corporation have similar rights. A *mandamus* will lie to admit them to the exercise of their functions, but no one will contend that they compose a corporation, separate from the body corporate of which they are officers.

*J. A. Spencer*, in reply.

*By the Court*, BRONSON, Ch. J. If "The Medical Institu-tion of Geneva College" is not a corporation, it has no capacity to sue, and the defendant is entitled to judgment. This is the only question made by the special verdict. The principal ar-gument for the plaintiffs depends upon maintaining the follow-ing propositions: 1. Each of the English universities of Oxford· and Cambridge has the power of creating subordinate corpora-tions, such as colleges, for giving instruction in the liberal arts and sciences: 2. Columbia College in the city of New-York has the same power in this respect as the English universities: 3. Geneva College has the same powers as Columbia College:

and 4. Geneva College, thus having the power, has created a corporation by the name of "The Medical Institution of Geneva College." If any one link in this chain is broken, the whole argument falls to the ground.

There is very little in the case to induce the belief that the trustees of Geneva College either supposed they had the power, or that they intended to erect the medical faculty of the college into a body politic or corporate. But whatever may have been their opinion or intention, I think they had no power to create a corporation for any purpose. Geneva College has "all the corporate rights and privileges enjoyed by Columbia College in and by the act" of April 13, 1787. (2 *R. L.* 262, § 6.) That act, with certain limitations and amendments not affecting the present question, ratified and confirmed the charter of *King's* College in the city of New-York, changing the name to Columbia College. (1 *Greenl.* 437, §§ 8—11.) The original charter was granted by lieutenant governor De Lancey on the 31st of October, 1754. It conferred power upon the governors of the college to appoint a president, who should hold his office during good behavior; and fellows, professors, and tutors, to assist the president in the education and government of the students, who should hold their offices either at the pleasure of the governors, or during good behavior, according as should be agreed upon between those officers and the governors of the college. The governors also had power to appoint a treasurer, clerk, and steward, and other inferior officers or ministers, who were authorized to exercise their offices, according to the direction and during the pleasure of the governors, "as fully and freely as any other the like officers in any of our universities, or any of our colleges, in that part of our kingdom of Great Britain called England lawfully may and ought to do." The governors were also authorized to make laws, ordinances, and orders for the better government of the college, and the students and ministers thereof, as they should think best, so that they were not repugnant to the laws of England : and further, to "give and grant any such degree and degrees to any of the students of the said college, or any other person or persons by them thought worthy

thereof, as are usually granted by any or either of our universities or colleges in that part of our kingdom of Great Britain called England." It was further granted, that the letters patent establishing the college, being entered of record, should be " good and effectual in the law, to all intents and purposes, against us, our heirs and successors, without any other license, grant, or confirmation from us, our heirs or successors." These are all the provisions of the charter to which we have been referred in support of the plaintiffs' case; and, whatever may be the powers of the English universities, I think it entirely clear that Columbia College has no power to create corporations of any kind, or for any purpose. It cannot be necessary to discuss the question. It is enough to say, that there is nothing in the charter which looks like a license or authority to erect corporations. The *chancellor* of the university of Oxford has power by charter to erect corporations. (1 *Kyd on Corp.* 50; 1 *Black. Comm.* 474.) But Columbia College has no chancellor. Its principal officer is a president, who has no greater powers than are usually conferred on the presidents of other colleges. They cannot make corporations.

Although it is now settled that the king may delegate his authority to create corporations; or, in other words, may exercise the power by another as his instrument, on the principle *qui facit per alium, facit per se,* I find no authority for the position that a general power to erect corporations has ever been delegated to either of the English universities. But however that may be, I think there is no color for saying, that such a power has been conferred upon any of our colleges.

Another argument remains to be noticed. It is said that the legislature has repeatedly recognized the plaintiffs as an existing corporation. (*Stat. of* 1835, *p.* 36; 1836, *p.* 579, 801; 1841, *p.* 205; 1844, *p.* 413.) Some of these statutes speak of the medical institution, and others of the medical faculty of Geneva College; but they all virtually recognize the college, and not one of its faculties, as the corporate body. There is no law conferring corporate privileges on the plaintiffs; and if

there had been such a mistake as that of calling them a corporation, it would have amounted to nothing more than a misnomer. But there has been no such mistake.

Judgment for defendant.