# EDMUND RYAN

*v.*

# DANIEL R. BRANT.

1. RESCISSION *of a contract of a sale for fraud in the vendee — at what time the vendor must offer to place the vendee in statu quo.* A vendor, on rescinding a contract of sale of goods on the ground of fraud in the vendee, must place the latter in *statu quo,* at the time the fraud was committed, or offer to do so. The rescission must be total, not partial; one portion of the contract cannot be affirmed and another portion repudiated.

2. Whether a return or offer to return what may have been paid or delivered to the vendor on the contract, must be made before suit brought under the

rescission, depends on circumstances, and on the nature of the property or thing to be returned. The great object in all such cases is to place a party in such a situation that he shall not be called upon by suit or otherwise, to discharge his obligations twice.

3. Where a party purchased goods upon credit, by means of fraudulent representations, and gave therefor notes signed by himself and a third person, secured by a deed of trust given by the latter, the vendor, on electing to rescind the sale, instituted his action of trespass on the case against his vendee, and upon the trial produced the notes, deed of trust and release of the same, properly executed, made a tender of them and left them on the files of the court to be delivered to the defendant on receiving a verdict. This offer to place the vendee *in statu quo* was held to be in apt time, and sufficient in law.

4. When a vendee obtains possession of goods by fraudulent means, and gives his own negotiable notes for the price, the vendor may maintain trover, without a demand, or a previous tender of the notes, provided they have not been negotiated and are produced at the trial to be surrendered to the defendant.

5. EVIDENCE — *a party cannot make evidence for himself — of the right of either party to read depositions.* As a general principle, a party cannot make evidence for himself, and be permitted to use it on the trial of his cause ; and the fact that such evidence may be contained in a deposition taken by the opposite party in the cause makes no difference in the application of the rule.

6. Our statute, which declares that depositions, when returned into court may be read by either party on the trial of the cause, cannot be construed as meaning that a deposition may be read by a party, which contains nothing but his own statements, or hearsay, or contains answers not responsive to the interrogatories.

7. ERROR WILL NOT ALWAYS REVERSE — *rejecting competent evidence.* A judgment will not be reversed because competent evidence may have been rejected, when its admission would not have influenced the verdict in favor of the party alleging the error.

APPEAL from the Circuit Court of Cook county ; the Hon. E. S. WILLIAMS, Judge, presiding.

The opinion of the court contains a statement of the case.

Messrs. MILLER & LEWIS, for the appellant.

Messrs. MONROE & McKINNON and HOOPER & BRANDT, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court :

This was an action of trespass on the case, brought in the Cook Circuit Court to the June Term, 1864, by Daniel R. Brant against Edmund Ryan, and verdict and judgment for the plaintiff. The cause is brought here by appeal, and the following errors assigned:

The Circuit Court erred in deciding that the offer of said plaintiff to surrender said promissory notes, and trust-deed, to the defendant, in case a verdict should be rendered for the plaintiff, was sufficient in law; in refusing to allow the defendant to read in evidence the letters marked A and B, and attached to the deposition of S. R. Clark; in charging the jury as requested by the plaintiff, and giving, in behalf of the plaintiff, instructions numbered three and five; in refusing to instruct as requested by defendant's counsel; in overruling the motion for a new trial.

The instructions numbered three and five, given on behalf of the plaintiff, and excepted to by the defendant, are as follows:

" 3. The court instructs the jury, as a matter of law, that the certificate of the secretary of State of the State of Wisconsin, under the great seal of State, is conclusive evidence, as against any and all papers in the case, that the title to the lands described in the deed of trust was, on the 17th day of April last, in the State of Wisconsin, and not in any other person or persons."

" 5. The court instructs the jury, as matter of law, that fraud destroys the contract, and that a fraudulent purchaser acquires no title to goods procured through false representations; and that, if a purchase of goods is effected by means of fraudulent representations on the part of the purchaser, known by the purchaser to be false, and which were relied upon by the seller, and in consequence of which he made the sale, the seller may maintain *trover* for them against the purchaser, without a previous demand; and if the purchaser in such case,

give a negotiable note or notes for the price of the goods so procured, the seller may maintain his action without a previous tender of the note, provided the note or notes have not been negotiated, and are produced at the trial to be surrendered to the defendant. And if the jury believe, from the evidence in this case, that, on or about the 17th day of April last, the defendant, Ryan, made the representations and statements set forth in plaintiff's declaration, and that said Ryan, by means thereof, knowing the same to be false and fraudulent, purchased and procured from the plaintiff, Brant, $1,360 worth of liquors upon the terms and conditions, and upon the security set forth in plaintiff's declaration, and that Brant, in making said sale and delivering said liquors, relied upon and believed the said statements and representations of Ryan to be true, and that Brant would not have made the sale and parted with his goods if he had known or believed the said representations and statements were not true, and as stated to him by Ryan:

" And if the jury further believe, from the evidence, that the said representations and statements were not true in point of fact, but, on the contrary thereof, that the same were false and fraudulent, and known to be so by the defendant, and made with intent to procure from Brant the liquors as aforesaid, then the court further instructs the jury, as matter of law, that in such case the defendant acquired no title to the property, and that Brant may maintain this suit against him, without a previous demand or tender of the notes, provided he produces said notes, and securities accompanying the same, on the trial, to be surrendered to the defendant, provided, also, the plaintiff has not, with a knowledge of the fraud (in case the jury shall believe, from the evidence, there was any fraud), done any act in affirmance of the original sale."

The following are the instructions asked by defendant and refused:

" 1 If the jury believe, from the evidence, that the defendant, when he purchased the liquors in question, gave and de-

6 — 42D ILL.

livered to the plaintiff therefor, his and Ann McConnell's promissory notes, and a trust-deed upon land owned, or claimed to be owned, by said McConnell, then, before the plaintiff can recover in this action, they must believe, from the evidence, that the plaintiff has restored or surrendered to the defendant and Mrs. McConnell said notes and the trust-deed, with the release thereof.

" 2. If the jury shall believe, from the evidence, that the defendant purchased from the plaintiff a quantity of liquors, and gave him therefor promissory notes (payable in 60 and 90 days from the date of such purchase), and a trust-deed of land to secure the payment of said notes, then the plaintiff cannot recover in trover for said liquors, without first proving that he returned, or offered to return, said notes and trust-deed, and release of the trust-deed, to defendant."

The facts are, briefly, that appellee, a liquor merchant in Chicago, was applied to by appellant, on the 17th of April, 1864, to purchase from him a bill of liquors, for the purpose of selling at retail at appellant's store in Elgin, and, to induce appellee to sell to him, he represented that he had a sister-in-law named Ann McConnell, who was wealthy, and seized and possessed of several tracts of land in Wisconsin ; that she would sign a note with appellant for the price of the liquors, and execute a trust-deed of these lands to secure the payment of the note. The lands were particularly described in the declaration, and as situated in the county of Waushara, in the State of Wisconsin. Appellant stated to appellee that the lands were worth twelve dollars per acre, and that Ann McConnell had a good and perfect title therefor, deducible from the United States ; that appellant had just returned from that county, and had examined the title, and could state of his own knowledge that the title was perfect in Ann McConnell, and that they were worth twelve dollars per acre. Appellee, confiding in these representations, sold appellant a bill of liquors amounting to thirteen hundred and sixty dollars, on a credit of sixty and ninety days, to be secured by two promissory notes of Ann

McConnell and appellant and a trust-deed on the lands; the goods to be delivered to appellant upon delivery of the notes and trust-deed. On the 25th of April thereafter, appellee received from appellant the two notes signed by him and Ann McConnell, payable as stipulated, and a third note for sixty dollars signed by these parties, and a trust-deed of the lands executed by Ann McConnell to John J. McKinnon, dated April 19, 1864, to secure the payment of the two first mentioned notes. Appellee thereupon delivered the goods to appellant. It appears that Ann McConnell had no title to the lands, and that appellant knew it at the time he purchased the goods, and that the lands were of little or no value; that she was in limited circumstances, owning no real estate except a homestead on which she resided — all which appellant well knew. Shortly after appellant received the goods, he sold them at forty per cent below their cost. Neither the first note nor the sixty dollar note, which were both due at the commencement of the suit, had been paid. It appears that appellant was worth but little. These are the material facts as proved.

There was a count in trover for the conversion of these goods.

On the trial, appellee offered to surrender the notes, together with a release of the trust-deed executed to secure the notes, to be delivered to the defendant when a verdict should be rendered. Appellant's counsel objected to this offer as insufficient, but the court overruled the objection and decided that the tender and offer to surrender and release the trust-deed was sufficient in law; to which appellant excepted.

The deposition of S. R. Clark, taken in Wisconsin, on behalf of appellee, referred in the answers to interrogatories to certain exhibits, which were the letters of appellant, which appellee declined to read to the jury, whereupon appellant's counsel proposed to read the letters, to which appellee objected, and the court sustained the objection, and appellant excepted.

The jury returned a verdict for appellee for $1,360, being the amount of the bill of goods, without interest.

The points made by appellant are confined to the assignment of errors, which we will examine.

It is insisted by appellant, that the offer to surrender the notes and procure a release of the trust deed was not in apt time; that a party who would disaffirm a fraudulent contract, must act promptly upon discovering the fraud, and return, or offer to return, whatever he has received upon it, if of any value, in order to recover the property fraudulently purchased of him. He must rescind the contract *in toto,* and so place the purchaser in the position he was before the sale, and he must do this before bringing the suit. For this proposition, several authorities are cited, and among them *Masson* v. *Bovet,* 1 Denio, 69, and *Baker* v. *Robbins,* 2 id. 136.

The case of Masson does not decide that the rescission and return of notes or property must be made before suit brought. The case of *Baker* v. *Robbins,* 2 Denio, 136, is to the effect stated.

The case of *Thayer* v. *Turner,* 8 Metc. 550, is also cited. That was an action of replevin on a fraudulent exchange of horses, where the court decided that the action would not lie until the plaintiff had rescinded the contract, by returning or offering to return the horse he had received. Nothing is said about the return or offer to return being made before suit brought. The case of *Wheaton* v. *Baker,* 14 Barb. 594, is also cited. In that case, nothing is said about a return or offer to return before suit. The case of *Deavendorf* v. *Beardsley,* 23 Barb. 656, decides only, that, when a party has been induced to enter into a contract by fraud, he may, on discovering the fraud, rescind the contract; and by restoring the other party to the condition in which he stood previous to making the contract, he may claim a return of what he has parted with, provided he does so at the earliest moment after discovering the fraud. The case of *Matteawan Company* v. *Bentley and others,* 13 id. 641, also cited, is to the effect, that if a party has received any thing under the fraudulent contract, he must restore or offer to restore it, before bringing suit. He cannot rescind in part and affirm as to the residue. From these authorities, it will be seen, that all that is necessary, on rescinding a fraudulent contract is, that the party committing the fraud shall be placed in *statu quo,* at

the time the fraud was committed. That a rescission must be total, not partial. One portion of the contract cannot be affirmed and another portion repudiated. Applying this principle to the case before us, how could appellant be placed more completely in *statu quo*, than he was placed by the offer made on the trial? The record shows that appellee on the trial produced the notes, deed of trust and a release of the same properly executed, made a tender of them, and left them on the files of the court to be delivered to the appellant on receiving a verdict. Did not these place appellant in the same position he occupied before the trial? The great object in all such cases is, to place a party in such a situation, that he shall not be called upon by suit, or otherwise, to discharge twice, his obligations. By this surrender, appellant was shielded from all future responsibility on the notes and deed of trust, and this is all he had a right to demand. That a return or offer to return must be made before suit brought, depends on circumstances, and on the nature of the property or thing to be restored. No other more opportune occasion for a surrender of the notes and deed of trust could be presented than on the trial of this action on the case. The offer is made under the eye of the court, and the proper means used to prevent the paper from getting into circulation, or of enforcing the deed of trust, and what more could be necessary to secure all the rights of the appellant? We have no doubt, the offer was made in apt time and sufficient in law. *Nichols* v. *Michael*, 23 N. Y. 272.

But there is a count in the declaration in trover, and the doctrine is well established, that a sale and delivery of goods procured through fraud of the vendee pass no title, as between the parties, and the vendor may maintain trover therefor, without a previous demand. *Bristol* v. *Wilsmore*, 1 Barn. and Cressw. 514; *Buffington et al.* v. *Genish et al.*, 15 Mass. 156; *Van Cleet et al.* v. *Fleet*, 15 Johns. 147.

It is also held, where a vendee obtains possession of goods by fraudulent means, and gives his own negotiable notes for the price, the vendor may maintain trover without a demand, or a previous tender of the notes, provided they have not been

negotiated and are produced at the trial to be surrendered to the defendant. To this effect is the case of *Thurston* v. *Blanchard*, 22 Pick. 18, and cases there cited by Chief Justice Shaw, and so is the case of *Stevens* v. *Austin*, 1 Metc. 557, to the same purport. Numerous other cases to the same effect are cited by the appellee, which we have looked into, but deem it unnecessary to cite more than one, and that is the case of *Smith et al.* v. *Doty*, 24 Ill. 165.

Upon the second error assigned, that the court refused to allow the letters of appellant, attached to the deposition of S. R. Clark, to be read as evidence by appellant, we have to remark, as a general principle, a party cannot make evidence for himself and be permitted to use it on the trial of his cause. The deposition in question was taken by appellee, on certain interrogatories, to which appellant appended cross interrogatories. Clark was recording clerk of Waushara county, and the object of his testimony was to disprove the statement of appellant that he had been at his office and examined the records as to the state of the title to the lands said to be owned by Ann McConnell. To this deposition were attached two letters written by appellant to Clark. We do not perceive in what particular, reading these letters to the jury could have influenced the finding of the jury; or palliated, in any degree, the fraud charged upon appellant. As a question of practice, it may be important to determine it now.

It is a *mooted* point, whether calling for the books of the opposite party and inspecting them, and doing nothing more, compels the party calling, to use the books, or authorizes, on his refusal, the other party to use them. Our statute, title "Evidence and Depositions," by section 18, provides, that all depositions taken in pursuance of this chapter, when returned into court, may be read by either party on the trial of the causes to which they relate. Scates' Comp. 259.

This provision must have a reasonable construction. It would be unreasonable to permit a deposition to be read by a party, which contained nothing but his own statements or hearsay, or contained answers not responsive to the interrogatories.

We are inclined to the opinion there was no error in refusing to appellant the right to read his own letters, though they were attached to a deposition, on the ground that no party has a right, under any form, to make evidence for himself. But if they were read, as we have already said, they could not have influenced the verdict in favor of appellant. They do not gainsay the assertion of appellant that he had just come from Waushara county where the land was situate, and found the title perfect. They do not even allude to any such visit and examination, and of course could have had no beneficial influence on appellant's case, and, if the reading was improperly refused, such ruling should not reverse the judgment.

As to the instructions on behalf of the appellee, marked three and five, we can perceive nothing objectionable in them. The third cannot be questioned, so far as the merits of this case are concerned. The certificate was evidence that the title to these lands was not out of the State of Wisconsin.

The fifth instruction is disposed of in favor of appellee, by what we have said above, in considering the merits of the case under the first assignment of error, and they also dispose of the instructions asked by appellant and refused.

In conclusion, the question of fraud in procuring the goods was fairly left to the jury, as was the question of the affirmance of the contract after appellee had obtained knowledge of the fraud. They have found both questions for the appellee, and we think properly. Perceiving no error in the record the judgment must be affirmed.

*Judgment affirmed.*