## DANIEL CARROLL ET AL.

### v.

## THE PEOPLE, use, etc.

1. RETURN OF CONSIDERATION—FRAUD.—The return of the purchase money is required in cases where that which was received and must be returned was the consideration of the contract of settlement which the receiver intended to make and understood he was making, and which he seeks to avoid by reason of fraudulent practices of the party which led him to agree to its terms. This rule does not apply, however, where a party holds out that he gives the consideration for one thing and by fraud obtains an agreement for another thing.

2. RELEASE—PLEA OF PAYMENT.—The court is of opinion that the

Carroll v. The People.

rule first announced applies in this case as Mrs. L. well knew that she was signing a release of the cause of action and that she was receiving $50 for it. It was her duty as soon as she discovered the fraud, if there was any and she desired to rescind, to return the money. The fact that there was a plea of payment could not bar appellant to insist on the return of the money unless he had asked in his instructions or in some other manner that this money should be so applied.

3. Rescission of contract—Time.—A defrauded party must rescind as soon as circumstances permit and must not go on with the contract after the discovery of the fraud, so as to increase the injury necessarily caused to the fraudulent party by the rescission. The mere lapse of time, if it be considerable, goes far to establish the waiver of the right, and if it be connected with the obvious ability on the part of the defrauded person to discover the fraud at a much earlier period by the exercise of ordinary care and intelligence, it would be almost conclusive. It does not make any difference that the consideration for which the release was signed was money, or that the money was spent, for that may always be returned.

4. Dram Shop Act—Bond—Claim for care and attention.—A claim was made under section 8 of the Dram Shop Act for care and attention, where appellants by the terms of the bond, which was in the language of the section of the statute requiring one to be given, were only liable for "all damages which any person may sustain either in person or property or means of support," by reason of appellant C. giving or selling any intoxicating liquor, etc. *Held*, that this does not appear to cover compensation for care and attention given to any intoxicated person while intoxicated, or the penalty of $2 per day for taking care of him after he becomes sober and while disabled on account of his intoxication.

5. Seller liable without reference to quantity sold.—While it may not be necessary to take out a license to keep a dram shop where sales are only to be made in quantities of one gallon and over, yet the statute makes the seller of liquor responsible for damages provided by the statute, without reference to the quantity sold. The bond is in its required terms equally broad and covers all damages resulting from intoxication caused by intoxicating liquor in whatever quantities it may be sold.

6. Instruction—Undue influence.—An instruction that "if Mrs. L. was induced to enter into the alleged settlement and to sign the paper of April 27, 1882, through the undue influence of others, and that such settlement did not express her own wishes and intention, then the paper she signed was not binding." *Held*, that this instruction was misleading and improper. Where a party has the mental capacity to contract and no fraud is used by the party with whom he contracts to induce him to enter into it, the contract must stand, notwithstanding bad advice acted upon.

Appeal from the Circuit Court of Warren county; the Hon. Arthur A. Smith, Judge, presiding. Opinion filed July 27, 1883.

Messrs. PORTER & PORTER, for appellants; that the court should have dismissed the suit on defendants' motion, cited 2 Bouvier Law Dict. 434; Penn. R. R. Co. v. Shay, 82 Penn. 198.

Liability of a surety is not to be extended beyond the terms of the contract and he is only liable for the acts of the principal within the scope of his authority: Brandt on Suretyship and Guaranty, §§ 79, 451, 483; Commonwealth v. Sommers, 3 Bush (Ky.), 555; Dedham Bank v. Chickering, 4 Pick. 314.

As to instructions upon the duty of the plaintiff if dissatisfied with the settlement to refund or offer to refund; Jenks v. Burr, 56 Ill. 450; Miller v. Holden, 18 Vt. 337; Gossett v. Andover, 21 Vt. 342; Coolidge v. Brigham, 1 Metc. 547; Brown v. Hartford Ins. Co., 117 Mass. 479; Ellington v. King, 49 Ill. 449; Buchanan v. Horney, 12 Ill. 338; Sanburn v. Batchelder, 51 N. H. 426.

As to the evidence of fraud: 3 Wait's Actions and Defenses, p. 445, § 12; Warren v. Gabriel, 51 Ala. 235; Beatty v. Fisher, 100 Mass. 448; Van Bibber v. Baine, 6 W. Va. 168; Taylor v. Fleet, 4 Barb. 95; Clark v. White, 12 Peters, 178.

Mr. I. M. KIRKPATRICK, for appellee; that the court properly overruled appellants' motion to dismiss the suit, as there was a dispute upon the facts, cited Rybolt v. Milliken, 5 Bradwell, 490; Ferris v. McClure, 36 Ill. 77.

As to pleading matter of defense: Hulbert v. Ellenberg, 65 Ill. 398; Christopher v. Ballinger, 47 Ill. 107; Rybolt v. Milliken, 5 Bradwell, 490.

A principal is entitled to the exclusive services of an agent: Story on Agency, § 210–31; Fish v. Leser, 69 Ill. 394.

If confidence is reposed it must be faithfully acted upon and preserved from any intermixture of imposition: 1 Story Eq. Juris. 308; Casey v. Casey, 14 Ill. 112; McDonald v. Fithian, 1 Gilm. 269–295; Bigelow on Fraud, 190, 273, 279, 283.

When the general doctrine that parties in the rescission of a contract shall be placed *in statu quo*, does not apply: 1

Wharton on Contracts, § 285; Bigelow on Fraud, 409; I. C. R. R. Co. v. Welch, 52 Ill. 185; Montgomery v. Welch, 116 Mass. 227.

A party can not assign for error that which he has requested the court to do: Northern L. P. Co. v. Binninger, 70 Ill. 575; Clemson v. State Bank, 1 Scam. 45; Emory v. Addis, 71 Ill. 275.

One who has taken a particular position is estopped from assigning error upon the result of it: Bigelow on Estoppel, 601; Cronk v. Trumble, 66 Ill. 431; Dunning v. West, 66 Ill. 366; Marquette R. R. Co. v. Marcott, 41 Mich. 433; Critchfield v. St. Louis R. R. Co. 64 Mo. 255.

LACEY, P. J.  This was an action of debt commenced by appellee for the use of Jane Lavis, on the bond of Dan Carroll, one of the appellants, given under and in accordance with the provisions of the Dram Shop Act in case of the issuance of license to keep a dram shop; the appellant, Carroll, having taken out a license for the purpose of keeping a dram shop in the village of Alexis, Warren county.  ·

The charge against Carroll was the selling of a four gallon keg of beer to Samuel Lavis, the husband of Jane Lavis, which he took home with him and it is claimed, drank of it to intoxication, on Dec. 25, 1881, by reason of which in attempting to board a moving railroad train of cars, he missed his hold and fell, the car wheels running over and crushing his ankle, which resulted in a necessary amputation, of which wound he died within a day or two.

This suit is to recover for the loss to the means of support of the wife.    Upon the trial the appellee recovered the amount of the penalty of the bond $3,000 debt, and $900 damages.

The pleas were *non est factum*, payment and release.    The suit was commenced May 15, 1882, and on September 4th, of the same year the appellant, Carroll, obtained from Mrs. Lavis a new release of the cause of action, for and in the consideration of fifty dollars paid at the time the first release was signed.    The original release was dated April 27, 1882, and was for the same consideration.    This release was

a complete bar to the action unless it can in some way be avoided.

The appellee claims that the release is void, "because it was procured by undue influence and fraud; that one Swan Martin under the guise of friendship won the confidence of the plaintiff and was thus induced to act for her to a certain extent, and that Carroll, knowing the position Martin occupied and his influence over her, used Martin for his own purposes and through his influence induced her to take the $50, and sign the release."

There is no question made that she did not know full well what she was doing when she signed the release. She was well aware that she was settling for her entire cause of action and knew the contents of the paper she signed. We do not feel called upon at this time to comment upon the sufficiency of the evidence to support such claim, as the judgment will be reversed on other grounds than the want of evidence to support such charge of fraud and undue influence.

It is claimed by appellant, Carroll, that before Mrs. Lavis could repudiate the contract of release entered into on the ground of fraud, she must first relinquish all benefits under it and return to him the money paid her for the execution of such release.

It is not denied that the general doctrine is that where a party seeks to annul a contract on the ground of fraud that there must be a restitution of the consideration, but it is claimed that the rule should not apply to this kind of a case; that she had dismissed her suit against him before she discovered the fraud, and had incurred costs; that there is a plea of payment interposed and under that appellant could be allowed the sum by way of payment.

That she was entitled to reasonable compensation under the 8th section of the Dram Shop Act for charge and care of her husband, and 4th, that the appellants are estopped by their own action in the case in asking, and the court giving instructions in their behalf, which authorized the jury to find against them without reference to any question of release, and especially in their fourth instruction, which tells the jury

that they can not find against appellants unless they find certain things proved, to wit: That the husband died of the injuries charged; that he was intoxicated at the time; that the accident was caused by such intoxication and that his intoxication was caused in whole or in part by liquor sold or given away by defendant, Carroll, omitting any question of the release.

We see no reason why the rule requiring restitution should not apply to this kind of a case as well as any other. There appears to be as much reason for it, and the costs of the suit dismissed, if any, could not be charged to appellants, and we have not discovered any evidence in the record of any costs in any former suit and the release in this case was executed subsequently to the dismissal of the former suit.

The fact that there was a plea of payment could not, as we hold, bar the appellant to insist on the return of the money unless he had asked in his instructions or in some other manner that this money should be so applied; but instead of doing so he asked the court to instruct the jury that the contract could not be annulled unless the consideration money was returned, manifesting his intention to stand upon his rights.

One may plead as many pleas as he may deem proper, but is not compelled to give evidence to support them, and on the trial the fifty dollars was not asked to be considered by the jury as payment. As to the point of claim under the 8th section for care and attention, such claim does not appear to be covered at all by the terms of the bond, which is in the language of the section of the statute requiring one to be given. By it appellants are only liable for "all damages which any person may sustain either in person, or property or means of support," by reason of Carroll giving or selling intoxicating liquor, etc. This does not appear to cover compensation for care and attention given to any intoxicated person while intoxicated, or the penalty of $2 per day for taking care of him after he becomes sober and while disabled on account of his intoxication. And considered as a separate claim of her own, outside the bond sued on, upon which the money could be applied, if for no other reason, the amount

would be far less than $50, not deciding, however, that it could be applied on such claim.

We can not see that anything that is said by the court in the case of the I. C. R. R. Co. v. Welch, 52 Ill. 184, has any application to the point in question here. In that case the contract sought to be avoided was claimed to have been obtained under the pretense that it was only a receipt for a month's wages.

We can not see from the 4th instruction given at appellants' instance, that they have taken such position as to the right of appellee to recover that they should now be estopped to insist on the return of the money before the contract could be rescinded.

That instruction told the jury that unless certain four links in the chain of the appellee's evidence were filled that there could be no recovery. But it did not tell them expressly or by necessary implication that if such proofs only were made, there could be recovery. The three following instructions, all on point of the release, showed clearly that it was not the intent to abandon the defense as to that point, and the fourth instruction should not be so construed. The third refused instruction offered by the defendant, was to the effect that unless Jane Lavis, as soon as she discovered the fraud and imposition by which she was induced to sign the release, if any, had refunded or offered to return the $50 consideration for the release, to Dan Carroll, she could not recover. This the court refused to give and we think it was error. The return of the purchase money is required in cases where· that which was received and must be returned was the consideration of the contract of settlement which the receiver intended to make and understood he was making, and which he seeks to avoid by reason of the fraudulent practices of the party which led him to agree to its terms. Braun v. Hartford Ins. Co. 117 Mass. 479; Coolridge v. Bingham, 1 Met. 547; Eastabrook v. Sweet, 116 Mass. 303. But the above rule does not apply to cases where a party holds out that he gives the consideration for one thing and by fraud obtains an agreement for another thing. Mullin v. The Old Colony R. R. Co. 127 Mass. 36.

Carroll v. The People.

In this case the rule first announced applied, for the reason that Mrs. Lavis well knew that she was signing a release of the cause of action and that she was receiving $50 for it. It was her duty as soon as she discovered the fraud, if there was any, and she desired to rescind, to return the money. Buchenau v. Horney, 12 Ill. 336; P. M. & F. M. M. Co. v. Boster, 47 Ill. 241; Staley v. Murphy, 12 Ill. 241. The defrauded party must rescind as soon as circumstances permit and must not go on with the contract after the discovery of the fraud so as to increase the injury necessarily caused to the fraudulent party by the rescission.

In other words, if he rescinds on the ground of fraud he must do so at once on discovering the fraud. 2 Parsons on Contracts, 278, 279; Mason v. Babet, 1 Denio, 67. The mere lapse of time, if it be considerable, goes far to establish the waiver of the right, and if it be connected with the obvious ability on the part of the defrauded person to discover the fraud at a much earlier period by the exercise of ordinary care and intelligence it would be almost conclusive. Ibid. 279, 280. Nor does it make any difference that the consideration for which the release was signed was money, or that the money was spent, for that may "always be returned." Smith v. Long, opinion filed at Ottawa, May 10, 1883, with the clerk of the Supreme Court.

It will be seen by reference to the case of Mullen v. The Old Colony R. R. Co. 127 Mass. R. 86, that the receipt in that case was of the same nature as the one in this, only in that case the receipt was procured by means of fraud in obtaining the signature to one paper when the signer supposed he was signing another, otherwise return would have been required as held by that court.

We think the point made by appellant that the bondsmen would not be liable for injuries occasioned as the result of intoxication induced by liquor sold by appellant, Carroll, in quantities of a gallon and over is not well taken. While it may not be necessary to take out a license to keep a dram shop where sales are only to be made in quantities of one gallon and over, yet the statute makes the seller of liquor responsible for

damages provided by the statute without reference to the quantity sold, and the bond is in its required terms equally broad and covers all damages resulting from intoxication caused by intoxicating liquor in whatever quantities it may be sold.

The giving of this bond as broad as it is required to be, is one of the conditions upon which license is issued to the dram shop keeper, and in giving it, he and his sureties become liable for damages resulting as specified therein. We think the principle has been fully recognized in Rogers v. Bell, 77 Ill. 593.

As to the 5th of appellee's instructions we think it should not have been given, as there appears to be no evidence upon which to base it. In this there is no proof that Mrs. Lavis ever employed Swan Martin to act as her agent, to make settlement of the cause of action sued on, or that she requested him to act, or that he did act for her, or that he pretended to act for her. The most that he did do was to take a written proposition to settle for $75, which was rejected. What action he took seemed to be as a messenger to carry propositions backward and forward. He gave Mrs. Lavis some gratuitous advice, not as her trusted or authorized agent, but independent of any employment.

She settled the matter face to face with Carroll at the final consummation.

The 7th appellee's instruction was erroneous and calculated to mislead the jury. By it they were told that "if Mrs. Lavis was induced to enter into the alleged settlement and to sign the paper of April 27, 1882, through the undue influence of others, and that such settlement did not express her own wishes and intention, then the paper she signed was not binding."

This instruction did not embrace any action or agency of Carroll in the matter of misleading her, but held that if others exercised undue influence over her without his fault she was still not liable. The words " undue influence" are a vague and misleading expression. What the jury might regard undue influence would be hard to tell and the phrase that such settlement did not express her wishes and intention is quite as misleading, in connection with the evidence in the case. I[f

Carroll v. The People.

does not appear from the evidence that she was not a woman capable of transacting ordinary business. The inference that the jury would most probably draw from such an instruction would be that if certain friends of Mrs. Lavis had given her bad advice and she had acted on it, and the jury believed that the contract was not advantageous, then it was void.

Where a party has the mental capacity to contract and no fraud is used by the party with whom he contracts to induce him to enter into it, the contract must stand, notwithstanding bad advice was acted upon.

The words, "undue influence," as defined by the Supreme Court, in the case of the execution of wills, may be resorted to for illustration here: "The influence exercised over a testator to avoid his will must be of such a nature as to deprive him of free agency and render his acts obviously more the offspring of the will of others than his own, and must be especially directed toward the object of procuring a will in favor of particular parties, and must be still operating at the time the will is made." Rutherford v. Morris, 77 Ill. 397. " If any degree of free agency or capacity remains with the testator, so that when left to himself he is capable of making a valid will, then the influence must be such as was intended to make a will essentially contrary to his duty, and it must have proved successful to some extent." Allmon v. Pigg, 82 Ill. 149.

If Mrs. Lavis, when left to herself, had mental capacity to transact ordinary business, and signed the release without any fraud having been practiced on her by appellant, Carroll, or his agent sufficient in law to avoid the contract, and no one exercised any dominating influence over her with the intention to benefit appellant, Carroll, or to wrong her in his interest, then the contract should stand; although she may not have been of great business capacity, yet if she was influenced by honest advice, and she signed the contract under such advice, however mistaken it may have been, she would be bound, provided always, she had the capacity to contract at all.

Reversed and remanded.