## Star Accident Company v. Jane A. Sibley.

1.  ACCIDENT INSURANCE—*Casualties Not Within the Exceptions of the Policy.*—Accidents resulting from the doing of such acts as hunting and the like, incident to the life of a considerable portion of mankind, are not within the exception of an accident policy providing that it shall be void as to all accidents occurring in any occupation, profession, employment or exposure not named or incident to the occupation under which the insured became a member of the association, unless he shall have procured a written permit therefor.

2.  ACCIDENTAL DEATH—*Presumption of Law.*—When a person comes to his death by the discharge of a gun in his own hands, the presumption of law is, in the absence of evidence to the contrary, that the act was not intentional on his part.

3.  SETTLEMENTS—*Repudiation of, Obtained by Misrepresentation—*

*Return of Money Paid.*—Where money only has been received in compromise and settlement of a claim, a party may, upon an allegation of fraud in procuring such settlement, sue for and recover the balance he claims, without tendering back the amount obtained as a result of the compromise.

**Memorandum.**—Assumpsit. In the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding. Declaration on an insurance policy; pleas; general issue, etc.; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the October term, 1894, and affirmed. Opinion filed January 10, 1895.

### STATEMENT OF THE CASE.

The facts as disclosed by the record show that appellant was a mutual accident association, incorporated under the laws of the State of Illinois, for furnishing life indemnity or pecuniary benefits upon the death of a member, to the designated beneficiaries of such deceased member, and for the purpose of furnishing accident or permanent disability indemnity to the members thereof; that on the 18th day of April, 1889, appellant issued to one Fred Sibley, of Albion, Michigan (a brother-in-law of appellee), a certificate of membership, or policy of insurance upon the life of the said Fred Sibley, in which certificate or policy appellee was named as the beneficiary; in and by which certificate or policy appellant promised to pay as follows: "The principal sum represented by the payment of two dollars by each member in division 'A' of the association, as provided in its by-laws (which sum, however, is not to exceed $5,000) to be paid to Jane A. Sibley, sister-in-law, if surviving, * * * within sixty days after sufficient proof that such member, at any time within the continuance of his membership, shall have sustained bodily injuries, received by or through external, violent and accidental means, within the intent and meaning of the certificate of organization of said association, and of its by-laws and the conditions thereunto annexed, and such injuries alone shall have occasioned death within ninety days from the happening thereof," etc.

The application for membership was made by Fred Sibley at Paw Paw, Michigan, on the 15th day of April, 1889,

upon a broker's application blank, in which Sibley states his occupation as that of an "auctioneer," and also in which he states: I have, not in contemplation any hazardous undertaking except as herein stated.  *  *  *   Going on a trip west." Upon the back of the application appears the classification of risks with the amount of insurance and weekly indemnity in each class, showing the death benefits as follows:

Class A, $5,000; class B, $4,000; class C, $2,000 and $3,000; class D, $1,500, etc.

In that classification, auctioneers are placed in class "A," and cattle dealers, livery stable proprietors, stable keepers and other similar occupations, are placed in class "C."

The evidence shows that this was not the regular application blank of appellant. The regular blank of appellant, used at the time, shows that only non-hazardous, or "preferred" occupations were carried by appellant. This is shown on the back of the regular application blank, where it is stated: "We carry but one class of risks, namely, in the 'Preferred' occupations," giving a list of risks among which appears "Auctioneer," but which does not contain cattle or horse dealers, livery stable keepers or any similar occupation.

It appears from the evidence that for the purpose of buying horses, Sibley went west immediately after making his application for membership with appellant; that his certificate of membership was received by appellee after he started west. This was about the middle of April.

It appears that afterward, on or about the 5th day of June, 1889, Sibley, the insured, while on the western trip and near Glenn's Ferry, Idaho, started out from his hotel in the morning with a gun, stating that he was going for a hunt, and that the next morning his dead body was found on the bank of the Snake river, near a row-boat, which had been drawn up to the shore, with the gun lying near him and a dead rabbit lying close by. There was a bullet hole through his head; the ball appearing to have entered the orbit of one of his eyes, going out at the back portion of the

skull, which was badly shattered. The body of the deceased was sent back to his home at Albion, Michigan, for burial. Afterward, and on or about the 24th day of September, 1889, Thomas S. Quincey, secretary and treasurer of appellant, went to Albion, Michigan, and made a settlement with Mrs. Sibley, the appellee, paying her $3,000 for her claim as the beneficiary named in the certificate of membership against the appellant. Before going to Albion to make this settlement, Quincey notified Mrs. Sibley of his coming and the purpose thereof, and after his arrival went to the place of business of the husband of appellee, but failing to find him there, went to appellee's residence, and before making the settlement referred to, suggested to her that she should consult with some one before settling with him, but she told him she would prefer to settle with him without consulting with any one, if they could agree.

Mrs. Sibley's sister was present at the time of the settlement and heard the statements that were made on both sides. It was claimed by Quincey, on behalf of appellant, at the time of making such settlement, that the association was not legally liable to her upon the certificate of membership for the reasons, first, that Sibley, the insured, had misrepresented his occupation, having stated in his application that he was an auctioneer, when, as a matter of fact, he was then engaged in the business of buying and shipping horses, a more hazardous occupation than that for which he was insured; second, that there was not sufficient proof that Sibley came to his death by an accident; but that rather than have any litigation over the matter, the company would pay to her the sum of $3,000, which amount was then and there paid to her by Quincey, and her receipt in full for the amount of her claim taken, and the certificate of membership surrendered up to Quincey.

Appellee, two days afterward, to wit, September 26, 1889, wrote a letter to Quincey, in which she says, " I wish to thank you for coming to me and showing me the attention in regard to my claim against the company. I acted according to my best judgment, and after consideration

convinced me that I acted for my best interest. Everything considered, I think they have dealt very generously with me. I am ready at any time to say the same to any of my friends," etc.

Afterward, the appellee became dissatisfied with such settlement, and made a claim upon the association for the balance originally claimed to have been due to her upon the certificate, to wit, $2,000. After some correspondence with the officers of the association, in which they declined to recognize her claim for any further payment, this suit was brought to recover such balance. No part of the $3,000 received by appellee was ever paid or tendered back to appellant, although she repudiated the settlement, claiming that she had been induced to make it by reason of fraudulent representations made at the time by Quincey, acting in behalf of appellant.

The principal contention here, as in the court below, is over the following propositions:

First. Was Sibley, the insured, guilty of misrepresentation in his application for membership as to his occupation?

Second. Did such misrepresentation avoid the policy or certificate of membership?

Third. Was there any such proof as is required by the terms and conditions of the certificate of membership, that the death of Sibley was occasioned by external, violent, and accidental means, and was not the result of design, either on the part of Sibley or any other person?

Fourth. Was the settlement procured through fraud and misrepresentation on the part of appellant?

Fifth. Could appellee maintain an action to recover the balance claimed to be due her under the certificate of membership, without paying or tendering to appellant the $3,000 received by her upon the settlement?

Sixth. Error in the instructions given and refused by the court below.

Albert H. Veeder and Mason B. Loomis, attorneys for appellant.

A. B. ST. JOHN, attorney for appellee; STORY, WESTOVER & STORY, of counsel.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

We do not approve of the phraseology of some of the instructions given for the plaintiff, reading as they do, that if the jury find that the defendant, through its adjuster, " was guilty of making to the · plaintiff the false and fraudulent representations as alleged by the plaintiff in her declaration," yet we are of the opinion that the jury were not unduly influenced by such expression, and did not return their verdict because they took these instructions as an intimation by the court of an opinion upon the facts.

As to all disputed questions of fact the jury have found for the plaintiff upon evidence which, while not conclusive, is such that it can not be said that the verdict is clearly contrary to the weight of the evidence.

A majority of the court are of the opinion that accidents happening from the doing of such acts as are incident to the life of a considerable portion of mankind are not such as are excepted from insurance, by the following provision of the policy in question:

" This certificate shall be wholly void as to all accidents occurring in any occupation, profession or employment or exposure not named or incident to the occupation under which he receives membership, unless he shall have first procured from this association through its secretary a written permit therefor."

While hunting is a thing which the average laborer, mechanic, clerk or small tradesman rarely if ever engages in, it is not an act so extraordinary as to excite attention as a departure from what an individual may be expected to do.

In the present case the insurance was for the occupation of an auctioneer. It does not appear that the assured had ceased to follow such calling, while it is shown that it was understood he was about to go west.

It also appears that when he departed for the west he

said he intended to buy horses.   The buying of horses is not inconsistent with the business of an auctioneer, or with a trip to the west.   His death was not caused by anything related to the business of buying horses; a business which it is not shown he had adopted as an occupation, profession or employment.

We do not regard the fact that while on a western trip he may have bought horses, or that he went west to buy horses, as showing a change of occupation; what he did or intended in that regard does not appear to have been more than the doing, for a brief time, of something outside his regular calling, which is no more than the majority of mankind do with more or less frequency.

We think that under the evidence of the death of the assured, by the discharge of a gun, the law does presume, in the absence of evidence to the contrary, that the act was not intentional upon his part; such a presumption is but a recognition of a law of nature, the exceptions to which are few.   C. & E. I. R. R. Co. v. Hines, 132 Ill. 161.

The jury having found that the settlement was obtained by means of false and fraudulent representations made by the agent of appellee, it is not necessary to an affirmance of the judgment, that we concur in the conclusion of the jury as to this matter; it is enough that we are unprepared to say that the finding is unsupported by, or clearly against the weight of the evidence.

A more difficult question is presented by the fact that the plaintiff having, as she says, succumbed to the fraudulent artifices of the defendant and received as a result the sum of $3,000 in consideration of her release of all claim, brought this suit and has recovered this judgment without returning or tendering back the money, to obtain which she had given a full acquittance.

Had the present litigation resulted in a judgment establishing that she never had a cause of action, she would still be and remain in possession of the fruits of her settlement and release.

It is useless to attempt to reconcile the conflicting decis-

ions upon the question of whether, when a release of a cause of action has been obtained by fraud, a tender back of that received for the release must be made before bringing suit to recover upon the original cause of action. A valuable collection of authorities is presented in the opinions, *pro* and *con*, of the judges of the Supreme Court of Missouri, delivered in Gerard v. St. Louis Car Wheel Co., published in The Chicago Law Journal for October, 1894. To the cases in this State there cited, may be added, Hefter et al. v. Cohn et al., 73 Ill. 296; Hayes v. Mass. Mut. Life Ins. Co., 125 Ill. 631; Buchanan v. Horney, 12 Ill. 336; Jennings v. Gage, 13 Ill. 61; Bowen v. Schuler, 41 Ill. 192; Ryan v. Brandt, 42 Ill. 78; Wolf v. Dietsch, 75 Ill. 205; Lovington v. Short, 77 Ill. 588; Kellogg v. Turpie, 93 Ill. 265; Strong v. Lord, 107 Ill. 25; Smith v. Brittenham, 109 Ill. 540; Preston v. Spaulding, 120 Ill. 208-227; Doane v. Lockwood, 115 Ill. 490; Farwell v. Hanchett, 120 Ill. 573; Rigdon v. Walcott, 43 Ill. App. 352; same, 141 Ill. 649; Carroll v. The People, 13 Ill. App. 206.

In the discussions carried on it has sometimes been said that the rule that he who seeks to rescind a contract must restore the *statu quo*—place the other party in as good a situation as he occupied when the contract was made—is satisfied if the judgment asked for will accomplish that result; that a distinction is to be drawn between cases where the thing he who seeks to rescind has received, is money, and those in which the reception has been of lands, merchandise, etc.; and that in the case of the reception of money it is sufficient if, by the pleadings, credit of the sum so received is given upon the claim made; that it is unreasonable to require a party to return the sum received and then immediately sue to recover it back again.

Upon the other side it is urged that so long as a party holds on to that which he has obtained as the result of a compact, he is, whatever may be his words, acting in affirmance of the contract, actually claiming and getting the benefit of an agreement which by his pleadings he assumes to repudiate and insists is null and void; that to allow one oc-

cupying such inconsistent position, thus blowing hot and acting cold, to speculate upon the result of a lawsuit, to hold on to the fruit of the agreement if he is unsuccessful and to deprive the other party of such fruit if the suit go in his favor, is not only absurd, repugnant to justice as well as in violation of well established principles of law, but tends to encourage litigation and to discourage the settlement of controversies.

A majority of the court being of the opinion that in this State, where money only has been received in compromise and settlement of a claim, a party may, upon an allegation of fraud in procuring such settlement, sue for and recover the balance he claims, without tendering back the amount obtained as a result of the compromise, the judgment of the Circuit Court is affirmed.