## Kisler *against* Kisler.

Specific cases of resulting trusts are two.  The first, where the purchaser has paid the price with his own money, but taken the conveyance in the name of another; not where he has paid with the money of another, and taken the conveyance in his own name :—and the second, where a trust has been declared of but part of the estate, from which the law implies an intent to reserve the beneficial ownership of the residue.

A purchase of land by a guardian, which he declared at the time to be for the use of his ward, is not such a trust as can be enforced by the ward, but is within the provisions of the statute of frauds and perjuries.

ERROR to the common pleas of *York* county.

This was an action on the case by Samuel Kisler, against Samuel Etter, administrator of Henry Kisler deceased, in which the jury found the following special verdict.

Henry Kisler was guardian of the plaintiff.  The ward had requested Henry to purchase Fisher's farm, then advertised for sale, for him; but no definite agreement was made.  Both appeared at the sale, which took place in the fall of 1828.  Samuel had procured a man to bid for him, who, as well as Henry, bid for the property, and the same was struck down to Henry, who at the time declared that he did not buy for himself, but for his ward Samuel; and Samuel assented to the purchase, and asked and procured a friend to bail Henry for his performing the conditions of sale.  From this it is to be considered, that Henry bought the property for Samuel.  Samuel was then twenty years of age.  In one month Henry resigned as guardian of Samuel, and Elisha Garretson was appointed in his place.  Henry offered the farm to Garretson for his ward on the same terms at which he had bought it, Garretson declined to take it, and Henry sold before Samuel was twenty-one years of age, for 2000 dollars more than he paid for it, which he received.  Henry filed his guardian account of Samuel.  The property was bought at Fisher's sale by Henry for 1266 dollars, subject to a dower of 2134 dollars, of the widow and children of a former owner.  On the day of the purchase, Henry paid 100 dollars on account.  This money Samuel procured and tendered to Henry before the re-sale of the property, and offered to take the purchase from Henry, and tendered security for the conditions of the sale; but Henry refused to let him have the farm.  If plaintiff is entitled to recover, then judgment to be entered for him for 2000 dollars as per agreement.  Henry Kisler filed his account as guardian of Samuel on the 6th of April 1829, exhibiting a balance in his hands of 743 dollars.  This was presented for confirmation on the 12th of May 1829, and exceptions were filed by Samuel, which are still undetermined.

[Kisler v. Kisler.]

The court below rendered a judgment for defendant.

*Lewis*, for plaintiff in error.
*Gardner*, for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—In England a trust results by implication of law but in two cases: the first where the purchaser has paid the price with his own money, but taken the conveyance in the name of another—not where he has paid with the money of another, and taken the conveyance in his own name : and the second, where a trust has been declared of but part of the estate, from which the law implies an intent to reserve the beneficial ownership of the residue. These are specific cases of resulting trusts ; and according to Lloyd v. Spillet, 2 *Atk.* 150, they are the only ones. Cases have undoubtedly been confounded with them, though readily distinguishable from them, in which a specific lien has been given for purchase money withdrawn from a fund towards which the purchaser stood in the relation of a trustee. A purchase by a husband bound to purchase and settle, has been presumed to have been made in contemplation of a settlement ; and in clear cases trust money paid away in a purchase, has been followed into the land, even on parol proof. But though the purchaser is spoken of in those cases as a trustee, just as a mortgagee is spoken of as a trustee, the equity of the party beneficially entitled is to have his money and not the land ; and such was the prayer in Lench v. Lench, 10 *Ves.* 512. But with us all distinction on this head is overlooked or disregarded ; and it seems to be settled by Gregory v. Setter, 1 *Dall.* 139 ; German v. Gabbald, 3 *Binn.* 302 ; and Duffield v. Wallace, 2 *Serg. & Rawle* 521, that a purchase with trust money, in whole or in part, gives the owner of the money a correspondent ownership of the land. How that was supposed to follow—whether from the inability of the courts to order a sale, or from the license left to parol declarations of trust by our statute of frauds—it matters not to inquire ; for though the bounds of these resulting interests have been sensibly enlarged, the trust is still considered to arise from the ownership of the purchase money. That it has been raised on no other foundation, shows this ownership to be the efficient cause, and not the direct creative power of an express declaration, which may, however, have a legitimate influence on the event, but only as a confession of the ownership. By any other hypothesis, what we call a resulting trust would cease to be an implied one. That an express trust may be declared by parol, I am not disposed to deny ; but if declared by the grantee and not the grantor of the legal estate, where its object is not to indicate a beneficiary purpose by the grantor in favour of the *cestui que trust,* it must, to be binding, be made in consideration of payment of the purchase money by the *cestui que trust ;* and then it would produce no other effect than the law would produce without it. Probably

[Kisler v. Kisler.]

it was the object of the statute to sustain a gift of the land by the grantor to a person not named in the conveyance; but not a gift by the party purchasing, the execution of which could not be enforced for want of a consideration. If I proclaim that I hold my house for B, it is evidence of a trust which may, however, be rebutted by proof that the beneficial ownership is not in him; for such a declaration is not binding as a gift even of a chattel. But if I convey my house to A, with parol direction to hold it for B, a confidence arises which it would be unconscionable in A to violate; and this would constitute that species of express parol trust, which it was the object of our statute to sustain. But if I proclaim that I hold my house for B, on terms of conveying it to him when he shall reimburse me what I paid for it; this is not a trust, but a contract of sale within the operation of the prohibitory clause. Now what is the case put before us? Had the ward reposed on his guardian's promise to purchase the property for him, it would have been strong for him on another ground. There would then have been a trust *ex maleficio* from the conduct of the guardian in keeping the ward back as a bidder, and, perhaps, getting a better pennyworth of the estate by seeming to buy it for him. Such a trust seems to be recognized in Lloyd v. Spillet, 2 *Atk.* 148; Peebles v. Reading, 8 *Serg. & Rawle* 492; and was actually enforced in Brown v. Dysinger, 1 *Rawle* 408. It arises from the artifice of the party to be affected, in procuring the title, and not, as Mr Justice Todd supposed in the last mentioned case, from the contract; so that it is obviously not related to those cases which are the usual subjects of contest under the statute of frauds. But as there was in fact no prejudice to the ward, who appeared at the sale and procured another friend to bid for him, he has not an equity on that ground. When the estate was struck down then, it was the property of the guardian; and what was the arrangement into which the parties presently entered? The guardian declared the purchase to be for the benefit of the ward, who was present and assented; upon which the guardian paid 100 dollars of his own money on the bargain, and gave security to perform the conditions of the sale, while the ward, who furnished no part of the consideration, procured a friend to be his surety. Now what is such a case? It is plainly that of one who agrees to sell his land for what he gave for it, between whom and his vendee there is no other trust than that which always accompanies a sale till the conveyance is executed. If I declare that I hold my house for B, it is evidence of a trust, because it is evidence that he has paid for it. If I declare that I hold it for him, provided he pay me a stipulated price, my declaration is evidence of a parol sale, which even our statute of frauds makes good for nothing. Of what importance, then, is the omission in it of the seventh section of the British statute? It gives room for a declaration of trust by parol; but it does not make that a trust which was not a trust before. It seems to me the " declarations or creations of trusts or confidences," prohibited

by the British statute and tolerated by our own, are such as the grantor of the legal estate is competent to make, as a further disposition of the beneficiary interest, and not the confession of a condition or agreement subsequently fastened on the title by the grantee. The first may be evidenced by the declaration of either party to the conveyance, with the assent of the other; and it vests an equitable title under our statute. But were the second permitted to have an effect forbidden to any other executory contract for the title, it would be pregnant with all the danger intended to be guarded against by either statute. Even when restrained to gratuitous trusts expressed at the execution of the conveyance, these parol declarations will be found sufficiently introductive of frauds and perjuries. But, with the qualifications indicated, they may certainly be sustained by parol proof. In other cases, the declarations of the grantee are admissible under our act, as they are admissible under the English statute; namely, as confessions by the party of a fact from which the law implies a trust, but does not raise it from their immediate and necessary effect. In Peebles v. Reading, a case like the present, except that the party claiming the trust had been the owner of the land, it was held that there was no resulting trust; but it seems to have been thought that there might be an express trust by force of the undertaking to purchase and convey: yet the judge who delivered the opinion of the court, at the same time considered the supposed *cestui que trust* as an ordinary purchaser affected by delay in seeking an execution of the contract, which he could not be if he were the beneficiary owner of the equitable title. It is not easy to reconcile all the positions taken in that case. The admissions and effect of parol declarations seem to have been considered as peculiar to our practice, though it is known that they were received in Halcott v. Markant, *Prec. in Ch.* 168; Wilson v. Foreman, 2 *Dick.* 593, and Lench v. Lench, already quoted, but admitted as confessions, by the trustee, of a fact, as the ground work of a legal implication. Being equally admissible in the English court of chancery, it is not easy to see what additional force they can have here, as direct declarations. An agreement to convey a title to be acquired and paid for hereafter, may be specifically enforced, if the externals of the contract be such as the statute allows of; but it is no more a trust than is an agreement to pay a stipulated price for a title acquired already. I am unable to discover any thing in Gregory v. Setter, or German v. Gabbald, like a peculiar effect given to the purchaser's admissions; though in the latter the restricted nature of the provisions in our statute of frauds is adverted to as putting the question of their competency at rest; and in this respect they are received perhaps less scrupulously here than in England. But in these two cases the trust was held to spring from the ownership of the purchase money, and not from the direct effect of any supposed declaration; consequently, considerations depending on the difference of statutory provisions did not enter into

[Kisler v. Kisler.]

the question; and notwithstanding the declarations were used in evidence, the trust was still considered as a legal implication. But in Duffield *v.* Wallace, the Chief Justice resorted to the express declaration of the purchaser to supply what he considered a deficiency in the usual ground of implication arising from the fact that payment was made but in part with the funds of the *cestui que trust;* but this resort was unnecessary, for, notwithstanding former doubts, it seems to be settled by Ryal *v.* Ryal, 1 *Atk.* 59; Bartlet *v.* Peckersgill, 4 *East* 577, note; and Lane *v.* Deighton, *Amb.* 409, that the estate may be charged *pro tanto* with a part of the purchase money. The other judges, however, put the cause on the ownership of the money; and thus we see that no greater effect has been given by our judges to parol declarations of the grantee, than has been given to them under the British statute. And it is fortunate that such has been the course of the court; for the danger to be apprehended from allowing to these the force of a direct conveyance has been conceded to be as great as could flow from establishing any other parol contract of sale. We have, then, an ordinary parol agreement to convey on being reimbursed the price paid, which is clearly without the statute of frauds.

Judgment affirmed.