MARY ROGERS

*v.*

BRIDGET SIMMONS *et al.*

1. PAROL TRUSTS *respecting lands—statute of frauds.* An express trust in respect to lands, resting entirely in parol, is within the statute of frauds, and void.

2. So where a guardian of minor children succeeded in purchasing a tract of land which had formerly belonged to the father of his wards, at a less price than he could otherwise have obtained it for, on the representation to the then owner of the land that he was acting as guardian and wished to secure the land for the children, taking the conveyance, however, in his

own name, absolutely, and paying his own money on the purchase, it was *held*, no express trust could arise in favor of the wards, based upon these representations of their guardian, because, being in parol, they were within the statute of frauds.

3. TRUSTS—*arising out of fiduciary relations.* Nor would a constructive trust arise, by operation of law, in such case, by reason of the fiduciary relation of the guardian, because his wards, for whose benefit he pretended he wished to purchase the land, had no interest therein, or claim or expectation of interest. The title to the land, although once in the father of the minors, had become vested in another party.

4. In order that a trust shall arise in favor of a person towards whom the fiduciary or confidential relation exists or is assumed, by reason of such relation, the person claiming the trust must have some interest, or, at least, some claim or reasonable expectation of interest, in the property claimed to be affected.

5. SAME—*what will amount to a fraud in respect thereto.* The mere violation of a parol promise or trust, as to an interest in land, will not, of itself, constitute such a fraud as will take a case out of the statute of frauds.

6. LACHES—*delay in setting up fraud.* The owner of a tract of land sold and conveyed the same in June, 1852, at a price less than he had previously offered the same to his grantee, the abatement in price being in consequence of the alleged false representations of the grantee that he desired to secure the land for the benefit of certain minor children, whose father had previously owned the land, and for whom the grantee had become guardian. In August, 1865, the grantor executed a quit claim deed for the premises to the wards of his former grantee: *Held*, if the grantor had the right, which these children could enforce, to have the deed to the guardian set aside by reason of such false representations, a delay until May, 1866, a period of fourteen years, in asserting such right, would bar the remedy.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

The opinion of the court contains a sufficient statement of the case.

Messrs. MACARTHUR, RICH & THOMAS, for the appellant.

Mr. LAWRENCE PROUDFOOT, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

On the sixteenth day of November, 1850, one L. C. P. Freer, as trustee, under a deed of trust made by John Smith to said Freer, March 28, of that year, to secure payment of a note of that date to Alonzo Hamlin, for $93.75, sold and conveyed to said Hamlin the forty-one acres of land in controversy for fifty dollars.

April 3, 1851, Hamlin, upon a judgment recovered by him against Smith for some sixty dollars, for the residue of the note unsatisfied by the sale under the trust deed, caused an execution to be issued, and another tract of land of forty acres adjoining the above, was sold to him thereunder by the sheriff of Cook county for $63.31, and a certificate of sale issued to him, which was recorded June 28, 1851.

March 31, 1852, Smith executed a mortgage to Philip Rogers, of the land covered by the sheriff's certificate, to secure the payment of $325.

April 12, 1852, Smith left for California, and has not since been heard from, excepting a letter from him in the latter part of that year.

May 27, 1852, Mrs. Smith, the wife of John Smith, and mother of the appellees, died, leaving them in their minority.

June 1, 1852, Philip Rogers filed an affidavit in the county court of Cook county, stating that John Smith was in California, the death of Mrs. Smith, leaving the appellees without guardianship, and that they had sundry articles of personal property, which might be lost or destroyed unless a guardian was appointed to take care of the same; and letters of guardianship were issued to him June 7, 1852.

June 29, 1852, Hamlin sold and conveyed the said first named tract of land to Rogers for the expressed consideration of $200, by a quit claim deed, and, at the same time, assigned to him said sheriff's certificate of sale of the other tract, from which time Rogers was in possession of said lands until his death, December 13, 1856; and ever since his death,

Mary Rogers, his widow and administratrix, and his two children Catherine and Philip, have been in possession of the lands and paid the taxes on the same from 1856 to 1863, both inclusive.

August 7, 1865, Hamlin and wife executed to the appellees a quit claim deed of the first named tract of forty-one acres, which was recorded August 12, 1865. The deed from Hamlin to Rogers was recorded September 5, 1865.

The bill in this case was filed May 16, 1866, by the heirs of John Smith against the widow and heirs of Philip Rogers, claiming that the said deed from Hamlin to Rogers was in trust for the complainants, and seeking to enforce its execution by a conveyance of the land described in it.

The trust is set up in the bill as follows: "That, on the twenty-ninth day of June, 1852, said Rogers went to Hamlin and informed him that he had been appointed guardian of said children, and wished to purchase said land for the benefit of his wards; and on these representations, said Hamlin executed a quit claim deed of said land to Rogers; that though the conveyance from said Hamlin to Rogers was absolute on its face, yet it was understood between them that it was a conveyance in trust to said Rogers as guardian of complainants, for the benefit of the wards of said Rogers," which seems to be an express trust. All the evidence to support it is the sole unsupported testimony of Hamlin, and is, in substance, this:

"Philip Rogers applied to me in April or May, 1852, to purchase the certificate, and I told him what I would take for it. He did not buy at that time. On the twenty-eighth or twenty-ninth of June, of the same year, he again applied to me, and stated that Mrs. Smith was dead, and he was appointed guardian for the children, and wished to settle up the matter and save for the children what he could. I told him if that was the case, I would make a deduction from the price I had previously asked him. He stated that he had lent John Smith money, and taken security on the same property. The same statement was made on his first application. We made our

80     ROGERS *v.* SIMMONS *et al.*     [Sept. T.,

Opinion of the Court.

arrangements, and I released the 41.05 acres purchased by me under the trustee's sale, and assigned the certificate of purchase under the sheriff's sale, to said Rogers. He paid me $150. I claimed over $200 as due me, but on Roger's representation that he wanted to save it for the children of Smith, I deducted fifty dollars."

On cross-examination, in another deposition of his in the case, he states it: "I let him have the property for fifty dollars less than I asked him on the first interview, because he stated he was guardian, and wanted to save something, or all he could, for the children."

The sufficient answer to the claim set up in this bill would seem to be, the citation of the provision in the statute of frauds and perjuries, that, "All declarations or creations of trusts, or confidences of any lands, tenements or hereditaments, shall be manifested and proved by some writing signed by the party who is, by law, enabled to declare such trust, or by his last will in writing, or else they shall be utterly void and of no effect: *Provided,* That resulting trusts, or trusts created by construction, implication or operation of law, need not be in writing, and the same may be proved by parol."

The deed in this case is absolute. The alleged declaration or creation of trust is not manifested, or proved by any writing, and is, therefore, as an express trust, utterly void and of no effect.

But it is claimed that here is a constructive trust, created by operation of law, because of the fiduciary relation of guardian which Rogers sustained.

The doctrine and authorities cited on the head, that trustees and others sustaining a fiduciary or confidential relation, can not deal on their own account in respect to the trust property, fail, in their application to this case, is this—that here the subject matter of the purchase did not fall within the assumed trust or relationship.

The father of these children was living. The sundry articles of personal property that Rogers was appointed guardian

to take care of, belonged to their father. They had no land. Neither they, nor either of their parents, had any interest, or claim, or expectation of interest, in this land, so far as appears. Neither did Hamlin intend for them any benefit in the land, further than as appears from the circumstances of the sale to Rogers.

What else appears in this respect is this statement of Hamlin in one of his depositions: "There was a balance left unpaid upon the note after the sale (trustee's). I went to Mrs. Smith, and proposed to her to release her dower. She hadn't joined in the trust deed. I proposed to her to release her dower, and I would hold on to the property until such time as she could make arrangements to settle it, and that she could occupy the premises. I told her if she would do that, I would not enter up a judgment on the balance of my claim, otherwise, I should have to enter it up and secure it on other property. She did not do it, and I got judgment for the balance, and execution was issued and levy made under it on another forty acres owned by Smith in that neighborhood. The judgment and costs amounted to over sixty dollars. There was a sale. I bid off the property to the amount of judgment and costs, and a certificate of purchase was issued to me."

This was a proposition, after the trustee's sale, to allow Mrs. Smith some benefit in the tract then sold, and not enter up judgment on the residue of the claim, if she would release her dower, but she did not do it, and he entered up judgment, and so the proposition fell through.

Rogers' inducement, in applying to purchase the land, would seem to have been his having a mortgage on one of the tracts. At the time of his first application, Mrs. Smith was living, Rogers had not been appointed guardian, and not a word was said by him or Hamlin in reference to the Smiths, or to guardianship, and Hamlin offered to sell the land for $200.

The lands seem to have been worth about five dollars per acre, but had cost Hamlin only about $113, and he was willing to sell for $200.

6—55TH ILL.

On Rogers' next application, he made the purchase, and, by his representations as to the children, and his being guardian, induced Hamlin to abate fifty dollars from the price he asked, and take $150, as Hamlin says now, although the consideration expressed in the deed is $200.

Rogers' representations, as it seems, did not influence the sale itself of the lands, but only the price obtained, and Hamlin intended no interest in the land for the children of Smith, but only that their estate should be benefited in the purchase to the extent of fifty dollars.

The doctrine and authorities cited all apply to cases where the person, towards whom the fiduciary or confidential relation existed, or was assumed, had some interest, or, at least, some claim or reasonable expectation of interest in the property claimed to be affected with the trust.

It is further urged that this case is taken out of the statute on the ground of fraud.

But the violation of a parol promise or trust as to an interest in land, does not constitute such a fraud as will take a case out of the statute.

No parol agreement or declaration, at the time a purchase is made, for the benefit of some other person, will raise a trust, in the absence of any other fraud than that which arises from a violation of a parol promise or agreement, if the purchaser pays his own money and takes the title to himself. *Perry* v. *McHenry*, 13 Ill. 227.

If a guardian makes a purchase of land, using his own money therein, but declares at the time that he purchased for the use and benefit of the ward, no trust is thereby created which can be enforced by the ward. *Kisler* v. *Kisler*, 2 Watts, 323. Such declaration is no more than a mere promise, or verbal agreement, to convey to the ward upon being reimbursed his advances, and is void under the statute of frauds. Ibid.

If there were any actual fraud in this case, it was not practiced towards the complainants, but against Hamlin; and his only cause of complaint would seem to be, that, by reason of Rogers' representations, he was induced to sell the property for

fifty dollars less than he otherwise would have done, and that was his damage; or that his intended benefit of fifty dollars to the estate of Smith's children had been frustrated.

But, admitting that Hamlin would have had the right to have the sale itself set aside, and that these complainants, holding a quit claim deed from him, might enforce his claim, the application on his bill to have the sale set aside on the ground of fraud as to him, would not be entertained in a court of equity after so great a lapse of time. His application should have been made within a much shorter time, and the $150 he received on the sale paid, or offered to be paid, back. The decree of the court below is reversed and the cause remanded.

*Decree reversed.*

WALKER, J. I concur in the decision of this case, upon the grounds that the application to the court for relief came too late, and an offer to return the money should have been made in the bill, at least.