Emily Allmon *et al.*

*v.*

Thomas Pigg *et al.*

1. WILL—*undue influence to avoid.* The influence to avoid a will must be such as to destroy the freedom of the testator's will, and thus render his act obviously more the offspring of the will of others, than of his own. It must be an influence specially directed towards the object of procuring a will in favor of particular parties; and if any degree of free agency or capacity remains with the testator, so that, when left to himself, he is capable of making a valid will, then the influence must be such as was intended to mislead him to make a will essentially contrary to his duty, and it must have proved successful to some extent.

2. SAME—*influence by withholding knowledge of facts.* Where a testator, by his will, gave all his property to his wife, except one dollar to each of his children, expressing a determination that none of his property should go towards paying a large judgment against a son, the fact that such son desired the will to be so drawn, and failed to inform his father that he had compromised the judgment, without clear proof that this influenced his action, is not any ground for setting aside the will.

3. TRUST—*devise with request as to future disposition.* No verbal understanding between a testator and his wife at the time of making a will giving her most of the property, as to her final disposition of it, will create a trust.

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. Amos Watts, Judge, presiding.

Mr. B. B. Smith, and Mr. W. W. Willard, for the plaintiffs in error.

Messrs. Bryan & Kagy, Mr. H. C. Goodnow, and Mr. T. E. Merritt, for the defendants in error.

Mr. Justice Scholfield delivered the opinion of the Court:

The decree of the court below sets aside, as null and void, the last will and testament of Hiram Allmon, deceased, and also certain conveyances made by his widow, the principal devisee under the will, on the ground of undue influence and fraud.

The rule recognized by this court is, " that the influence, to avoid a will, must be such as to destroy the freedom of the

testator's will, and thus render his act obviously more the offspring of the will of others than of his own; that it must be an influence specially directed toward the object of procuring a will in favor of particular parties; and if any degree of free agency or capacity remained in the testator, so that, when left to himself, he was capable of making a valid will, then the influence which so controls him as to render his making a will of no effect, must be such as was intended to mislead him to the extent of making a will essentially contrary to his duty, and it must have proved successful to some extent, certainly." *Roe et al.* v. *Taylor,* 45 Ill. 491.

The evidence in this record entirely fails to even approximate this requirement. The will in itself is not an unreasonable one. The property, except the nominal sum of one dollar given to each of the testator's children, is left to his wife, their mother. The evidence shows the testator was in his right mind when he made the will, and there is no evidence that it was not his own voluntary act. He dictated the terms of the will, and when the first copy was drafted he objected to it because it gave all the property to his wife—he being of opinion, as he expressed himself, that, to make it legal, it was necessary to give the heirs something; and at his instance it was redrawn with that correction, and signed by him. He then expressed himself entirely satisfied, and that "he was ready to go"—meaning thereby that he was prepared to die.

As to the ultimate disposition of the property, there is no doubt he expected his wife to make an equitable distribution of what she should not consume, among their children, and it may be they had, between themselves, some understanding how that ought to be. But he trusted this all to her, and there is no evidence that he designed other restrictions upon her than those contained in the will.

The evidence tends to show that the testator desired to make a will, chiefly because there was a judgment against his son Thomas, in favor of one Oglesby, for some $2000, which he did not want to have paid out of any portion of his estate; and there is evidence that Thomas was urgent that he should

make a will, but the proof does not show that the desire to avoid having this judgment paid from the estate was induced by Thomas, or that the persuasions of Thomas affected him in making his will, and caused him to make it otherwise than he would have done but for his influence. But it is said Thomas had compromised, or arranged to compromise the judgment, for a small sum of money, and he withheld knowledge of this from the testator at the time he made the will. The proof of this is not at all satisfactory—that is, that knowledge of the efforts being made to compromise, and the amount required for that purpose, were unknown to the testator. Thomas swears he did know of it; that he told him of the amount, and asked to borrow the sum of him, but he did not have it. But the evidence is not clear that he would not have made the will as he did, if he had known that the judgment had been fully paid, and to justify a court in setting aside a will, the evidence should be clear and convincing.

The real difficulty here seems to be, the devisee has given more of the property to some of the children than to others, and those to whom the lesser shares are given, very naturally have an extreme solicitude to have what they regard as a more equitable division.

The will being made by one in his right mind, unaffected by such improper influence as, in legal estimation, prevents it from being considered as his will, must control. Whatever verbal understanding there may have been between the testator and his wife with regard to her final disposition of the property, it did not create a trust. *Rogers* v. *Simmons et al.* 55 Ill. 76. And there is no foundation for relief on that ground.

The decree is reversed and the bill dismissed.

*Decree reversed.*