## Phillips *versus* Hull.

101    567
213    2223

1. A trick or artifice, unknown to the defendant in an execution, whereby the plaintiff is enabled to buy the former's property at sheriff's sale for much less than its value, will avoid the sale; but where the defendant has knowledge of the acts alleged to constitute such artifice, and by his conduct and assent joins in, or ratifies them, the sale as to him is valid.

2. A., who held certain judgments, to the amount of $11,000 against B., against whom there were also later judgments, agreed to have B.'s farm sold at sheriff's sale, buy it in for about $11,000, taking the deed in his own name, and allow B. to remain on the farm for a while, and then sell it at private sale, in parcels or to the best advantage possible, and after paying A.'s claim to keep the remainder. Before the sale C., a subsequent judgment creditor, offered $13,000 for the farm, and on this being refused said he would attend the sale and buy it there. A., in B.'s presence offered C. $100 to stay away from the sale, and said that B. would also give him $100 worth of corn, which they did. C. stayed away, and A. bought the farm at the sale for $4,000, allowing B. to remain on it for a year and a half, when, B. having failed to sell it or to pay A.'s claim, A. notified him to leave the premises; which B. did, and afterwards brought ejectment against A., alleging fraud on his part in offering C. $100 to stay away from the sale, and in buying the farm for $4000. A. signified his willingness to reconvey the property to B., or to any one whom he might designate, on payment of the judgments.

*Held*, that B. could not recover.

November 28th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Crawford county*: Of January Term 1882, No. 308.

Ejectment, by James Hull against John Phillips to recover two hundred and fifty acres of land in West Shenango township, Crawford county.

At the trial, before Church, P. J., the following facts appeared:—The title to the property in question was in Hull up to February 1879. About January 1st of the same year, Phillips, who held or represented judgments against Hull to the amount of $11,000, at the latter's request, went to see him in order to arrange for securing this indebtedness, there being also other small judgments against Hull. At this interview it was agreed that the property should be sold at sheriff's sale, and that Phillips should buy it, taking the deed in his own name, so that it might be sold afterwards in small parcels, or to the best advantage possible, and that Hull could retain anything left after paying the judgments.

By him it was alleged that Phillips agreed to sell the farm at sheriff's sale, purchase it for about $11,000 and allow Hull to remain on the place until he could sell it at private sale; that Phillips accordingly issued execution and the farm was adver-

tised for sale in February 1879; but shortly before the sale Richard and Luther Mullen, who were later judgment creditors to the extent of about five or six hundred dollars, met Phillips by appointment at Hull's house and offered to give $13,000 for the farm, and upon being told that it was worth much more said they would attend the sheriff's sale and buy it there; that Phillips then told them he wanted to save the place for Hull, and would give them $100 out of his own pocket, and that Hull and his wife would give them $100 worth of corn if they would stay away from the sale. The Mullens did therefore stay away from the sale, and Phillips bought the farm for $4,000, and when Hull remonstrated with him for bidding it in so low, he said it would make no difference in their arrangement but would save sheriff's percentage; and finally that Phillips soon began to exercise control over the farm denying any right thereto to Hull, to whom he gave formal notice to leave about a year after the sale, and took possession of the farm himself, soon afterwards reviving his judgment and claiming that Hull was still indebted to him. Hull therefore brought this action against Phillips alleging fraud by the latter in offering the Mullens $100 to stay away from the sale, and in purchasing the farm for only $4,000.

Phillips, on the other hand claimed, that by the agreement he was to bid in the farm, as low as possible to save costs, and give Hull one year in which to find a purchaser for a sum in excess of $11,000, when the former was to convey, take out the money due him, and give Hull the balance. Phillips further alleged that he allowed Hull to remain on the farm for one year, without finding a purchaser, and then continued the time for six months longer, when, upon Hull's failure either to fine a purchaser in a year and a half, or to pay anything on the judgment, Phillips notified him to leave the farm; but that he was ready and willing, at anytime, to reconvey the same to Hull, or some one designated by him, upon payment of the sum due on the judgments.

The defendant submitted inter alia the following points.

1. "That if the jury believe from the evidence that there was an agreement in parol between John Phillips, the purchaser and James Hull, the defendant in the execution, that the purchase of the property should be for the benefit of the latter upon certain terms, a representation of the fact made before the sale in the presence of the defendant would not vitiate the purchase, even though it should cause the property to be sold below its actual value.

Answer. This point is affirmed, if there were no more in the case than the facts therein assumed and stated.

2. "That the effect of such agreement and representation as

[Phillips *v.* Hull.]

mentioned in first point could not go farther than to make John Phillips a trustee for James Hull, and no recovery in this case can be had against the defendant without reimbursement of the amount paid by him, and the amount held by him as a judgment creditor of said plaintiff, and there being no reimbursement or offer to do so in this case, the plaintiff can not recover.

Answer. This point is true, if there were no more in the case, but that there is more is claimed by the plaintiff, and it is for you to determine. He has given evidence upon the subject, and he claims upon a different theory than contemplated by the point and its predecessor."

10. That even if the jury find from the evidence that Phillips offered Luther Mullen $100 to induce him to stay away from the sheriff's sale, and that the offer was made in the presence and with the knowledge of Hull, and that Hull made no objections thereto, but was satisfied with the arrangement, and still desired Phillips to buy the farm under the previous agreement, it was not such a fraud upon Hull as to avoid the sale.

Answer. This is refused under the evidence in this case.

11. That under the law and all the evidence in the case the verdict should be for the defendant.

Answer. Refused.

Verdict for plaintiff, and judgment thereon, whereupon the defendant took this writ of error, assigning for error the answers to his points as above stated.

*Jas. A. Stranahan* and *Wm. R. Bole* (with whom was *Geo. F. Davenport*), for plaintiff in error.—The alleged agreement by Phillips to pay Mullen $100, even if true, was not a fraud upon Hull; the latter heard the bargain and adopted and ratified it, by actually giving Mullen the corn, in pursuance of part of the same arrangement. Phillips did not get the farm by artifice or trick, but because Hull wished him to do so, and although Phillips induced others, in Hull's presence, not to bid, this was in furtherance of their common purpose. Even if the sale were a fraud upon Hull, he subsequently ratified it also, by saying that he was " perfectly satisfied," with Phillip's explanation of the matter; and he accepted and retained benefits under the *original contract*, after discovering the alleged fraud, by unduly delaying to claim the land: Pearsoll *v.* Chapin, 8 Wr. 9; Negley *v.* Lindsay, 17 P. F. S. 217; Seylar *v.* Carson, 19 P. F. S. 81. The transaction between Phillips and Mullen in Hull's presence was not a fraud upon Hull, and there is nothing, therefore, left but a parol agreement by one to buy land for another, which comes within the statute of frauds. This case is governed by the doctrine laid down in Jackman *v.*

Ringland, 4 W. & S. 149; Barnet *v.* Dougherty, 8 C. 371; Kellum *v.* Smith, 9 C. 158; and Bennett *v.* Dollar Savings Bank, 6 N. 382. If Hull is allowed to recover at all it can only be by conditional verdict; by paying Phillips the amount for which he bought the land, and holds it as security.

*J. B. Brawley* and *John J. Henderson*, for defendant in error.—The plaintiff in error obtained a title to the farm of the defendant in error, at a grossly inadequate price, by representing to the defendant that he would bid it in at the amount of debts due on it, and that he would bid it in for the defendant; by representing to Mullen, who proposed to bid at the sale, that he (Phillips) was going to bid the farm in for Hull and save him a home, and that he did not want him (Mullen) to bid against him on that account; and by paying to Mullen $100 as an inducement to him not to bid at the sale. These facts are established by the testimony of at least five witnesses. There can be no doubt that a title thus acquired is void: Slingluff *v.* Eckel, 12 H. 474; McKennan *v.* Pry, 6 Watts 137; Abbey *v.* Dewey, 1 Casey 413; Seylar *v.* Carson, 19 P. F. S. 81. Bennett *v.* Savings Bank, 6 Norris 382, and the other cases cited by plaintiff in error are cases of parol agreements and nothing more; in none of them were bidders dissuaded from bidding by the representation that the property was to be bought for the defendant; in none of them was money paid by the purchaser to buy off a bidder. These "devices" and "deceits" are what the law condemns. It was not necessary to tender to Phillips the amount of his bid before bringing suit: Gilbert *v.* Hoffman, 2 Watts 67; Smull *v.* Jones, 1 W. & S. 138. But the plaintiff in error says that he ought not to be held responsible for his fraudulent conduct because Hull knew that he had the arrangement with Mullen, and that he was to buy in the farm. If, however, Phillips falsely and fraudulently represented to Hull that he would sell the farm at sheriff's sale, on his judgment, for the purpose of putting the title in a more convenient shape to sell in pieces, and that he would bid it in and then they would sell it to pay the balance of the debts and that the remainder of the land should be his, and that he would do this for the purpose of saving him a home, and by such fraudulent representations obtained the consent of Hull to the buying in of the farm, and thereby was enabled to get it for one-fourth of its value, the consent of Hull, so obtained, would not give validity to the title.

Mr. Justice MERCUR delivered the opinion of the court, December 30th 1882.

This is an action of ejectment to recover land bought at

[Phillips *v.* Hull.]

sheriff's sale by the plaintiff in error, as the property of the defendant. The plaintiff owned and was interested in judgments against the defendant in error aggregating about $11,000. The latter seeks to recover on a parol agreement made with the plaintiff in error by which he was to sell the land at sheriff's sale, buy it, and hold it until a private sale thereof could be made, and after the amount due to him was paid, the defendant in error was to have the residue. The latter was to advance nothing, to pay nothing. Without his assent the plaintiff could have sold. The defendant made no agreement that he would afterwards purchase the land at any price. If this were the whole case it is very clear the defendant in error could not recover. As the purchase was made, and the money paid by the same person, a refusal to fulfill the agreement is no more than the violation of a parol agreement, and equity will not decree the purchaser to be a trustee: Kisler *v.* Kisler, 2 Watts 323; Sidle *v.* Walters, 5 Id. 391; Robertson *v.* Robertson, 9 Id. 32; Fox *v.* Heffner, 1 W. & Serg. 372; Jackman *v.* Ringland, 4 Id. 149; Barnet *v.* Dougherty, 8 Casey 371; Kellum *v.* Smith, 9 Id. 158; Bennett *v.* Dollar Savings Bank, 6 Norris 382.

It is claimed, however, by the defendant in error, that the plaintiff was guilty of a trick or artifice whereby the effect of the sheriff's sale was avoided. It may be conceded that a trick or artifice unknown to the defendant in error which operated to his prejudice would have that effect. If however he had full knowledge of the alleged fraudulent act and participated in it, or if the act now complained of did not operate to enlarge or affect the title which would otherwise have passed by the sheriff's sale, then the equitable rule does not aid the defendant in this case.

The first complaint is that the plaintiff in error induced the Mullens, who were later judgment creditors, to stay away from the sheriff's sale and not bid against him, by representing that if he bought it the defendant was to have the privilege of selling the land at private sale for his benefit. All this conversation with the Mullens was in the presence and hearing of the defendant and his wife. They participated in it. At the same time an agreement was made as to the payment of the Mullen judgment. The defendant in error and his wife each testified that plaintiff said he would give $100 on it, and that they would pay $100 in corn, and that he would guarantee the payment of the residue of the judgment.

The Mullens are not here complaining. They are not parties to this suit, nor interested in the judgment. No question arises with any creditor of the defendant. This is purely a question between the parties and between them alone. Whatever was said and done to prevent the Mullens from bidding at

the sale, was with the knowledge and assent of the defendant. In contemplation of law it was as much his act as the act of the plaintiff. If it was wrong he was a party to that wrong. He cannot now set it up to affect the sheriff's sale.

The other complaint is that the plaintiff bid only $4000, instead of about $11,000, as he should have done. If however, in all respects, he recognizes his duty and obligation to be the same as if he had bid the larger sum, we do not see how the defendant is prejudiced by the smaller bid. The latter testified that a few days after the sheriff's sale the plaintiff informed him that he had bought the farm for $4,000. At this he complained; but on being told that it was better for him as it saved sheriff's percentage, and should not make any difference in their bargain, he was satisfied. This subsequent assent was a ratification as effective, as if the bid had been previously authorized.

The defendant testifies that his liberty to make a private sale was not limited to any specific time. The plaintiff swears it was to be within one year. Three other witnesses, Beeman, McCracken and Webb, each testify to the admission of the defendant, indicating he was to have one year only in which to effect a sale. If, however, no time was specified, and he was under no legal obligation to sell, he could not claim his option to continue for an unreasonable time. In fact the plaintiff did extend the time for six months beyond the year. In the mean time an offer of $13,000 was made to the defendant for the land, but he refused it. All this time he was in possession of the property and at most paying no more than the interest on the indebtedness. On demand of possession by the plaintiff he gave it up, without being ejected by legal process, and afterwards brought this suit.

The plaintiff in error admits an arrangement was made substantially as defendant testifies, varying as to the time in which the latter might sell it. But he further testifies that at all times since the sheriff's sale he has been, and now is ready and willing, on payment of the amount due him, to convey the land to the defendant or to any person he may designate. With the exception of about one year's interest on the judgments of the plaintiff no part of them has been paid since the sale. The defendant in error seeks to recover possession of the land and hold adversely without making payment. His claim is one in equity only. He must first do equity. He must either pay or tender payment. He has not done either. His own testimony shows no such artifice or fraud on the part of the plaintiff as to relieve him from this obligation. The learned judge under the whole evidence should have affirmed the first, second and tenth points submitted by the plaintiff in error, as well as the eleventh, that

[County of Crawford *v*. City of Meadville.]

the verdict be in his favor. In so far as the other specifications are in accordance with this opinion they are sustained.

Judgment reversed and a venire facias de novo awarded.