77   587
141   662
77   587
154   381
77   587
57a   322

# JOHN B. LOVINGSTON
## *v.*
# JOHN SHORT.

1. RESCISSION OF CONTRACT—*for defect in title, where the purchaser is not disturbed.* Where a purchaser of land by warranty deed knows. at the time of his purchase, that the title is suspicious, and has the same exam-

ined, and takes a conveyance, relying upon the covenants of warranty, he will not be allowed to rescind the purchase, where he has not been disturbed in his possession, and nothing appears to show that he will be.

2. SAME—*must be in toto.* A party can not rescind an entire contract in part, retaining that which is valuable to him and compelling the other party to take back that which may prove to be of no advantage, in the absence of any fraud practiced upon him. If he rescinds it at all, he must do so *in toto.*

3. Where a party applied to purchase one of two tracts of land, which the owner refused to sell unless he would take both, and the purchaser, knowing that the title to the other tract had been questioned, bought both, taking a warranty deed as to the estate sold, and afterwards, without having ever been disturbed in his possession, filed his bill to rescind the sale as to the latter and least valuable tract: *Held,* that his bill was properly dismissed, there being no claim the warranty was not good.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was a bill in chancery, by Lovingston, against Short, to enjoin a sale, under a trust deed, of two tracts of land given to secure the balance of the purchase money, and to rescind the sale, as to one of the tracts, on account of alleged defects in the title thereof, and to allow a corresponding reduction in the price to be paid. The opinion of the court states the facts of the case with sufficient fullness to a clear understanding of the merits.

Mr. WM. H. UNDERWOOD, for the appellant.

Messrs. G. & G. A. KŒRNER, for the appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

On the 15th day of August, 1871, defendant sold to complainant his unexpired leasehold estate in $37\frac{1}{2}$ acres of land, which had been granted by the supervisor of the village of Cahokia, on the 27th day of May, 1841, for the period of 99 years, and conveyed the same by warranty deed. It was not understood, nor is it claimed, that defendant pretended to

sell the fee of the land, but simply a leasehold estate, and the warranty was that he was seized of, and had the right to convey, such an estate. The land sold consists of two lots, one containing $17\frac{1}{2}$ acres and the other 20 acres. The latter is the one about which this controversy arose.

The original lease for the lot in controversy was made to a grantor of Mary Neville, from whom defendant claims whatever title he has. Subsequent to the grant to her, Mrs. Neville intermarried with a man by the name of Hays. She had two sons by her former husband, but whether they are now living, does not appear, from anything in the evidence. Nothing definite has been heard from either of them for many years. Rumors of their death have prevailed, but nothing reliable is proven.

Before her death, Mrs. Hays made and published a will, by which she appointed defendant sole executor. In recording the will, when it was admitted to probate, a mistake seems to have been made in using the word "transfer," instead of lease, where that word occurs in the second item. It was supposed the word "transfer," as used in the will, gave the executor power to sell and convey all the interest the testatrix had in the property involved in this litigation. All parties so regarded it at the time of the sale to complainant. Both parties had their attorneys examine the records, to ascertain what power defendant had under the will. They, however, did not examine the original will, but only the record of it. The examination was made when all the parties and their counsel were present, and there does not seem to have been any disagreement that the will, as recorded, gave the executor full authority to make the sale. Twenty years had then intervened since the will had been admitted to probate, and whether the executor, within that period, had seen the original will, does not appear; but if he had, he could not read it. It is proven he could neither read nor write. It is evident the executor acted in the utmost good faith in making the sale, believing he had the clear right to do so under the will.

Before the first installment of the purchase money became due, the mistake in the record of the will had been discovered, and complainant undertook to rescind the contract of sale, so far as the 20-acre tract is concerned, but sought to affirm it as to the other smaller and much more valuable one. Accordingly, he filed his bill to enjoin the sale of both tracts under the deed of trust that had been given to secure the deferred payments, and to have allowed a reduction or compensation for the relative value of the 20-acre piece, to which it is insisted defendant had no title.

Admitting the existence of the mistake in the record of the will, that the word "transfer" should be read "lease," a grave question arises, when the context is considered, whether, under the will, the executor had not power to make a valid conveyance of the leasehold estate. The estate which the testatrix had in the property was less than a freehold, and whether it descended to the heirs or the executor, the third clause of the will gave the executor the right to occupy the premises at a yearly stipulated rent. The duration of his occupancy was not limited, except by the duration of the estate itself. The executor had entered upon the premises, and occupied the same for nearly, or quite, 20 years prior to the sale to complainant. Whatever estate the executor may have acquired under the third clause of the will, he could assign to any one who might choose to purchase. By the deed he conveyed to complainant all his interest in the property, whatever it was and however it may be defined, and transferred to him his possession. It is not claimed any one having paramount title has interfered with that possession, and, for aught that appears, complainant, and his heirs and assigns, could hold the possession during the existence of the leasehold estate. That was all complainant bargained for. But we do not desire to discuss this branch of the case further; as the decision of the case may be rested on other grounds.

Before complainant concluded the purchase, he had heard

defendant's title to the 20-acre tract questioned. He undertook to purchase the smaller tract by itself, which is proven to be most valuable, but defendant refused to sell in that way. If he could not sell both tracts, he would not sell either. Notwithstanding complainant knew the title was, to some extent, suspicious, he chose to make the purchase of both tracts, and rely on defendant's covenants; for he says himself he knew defendant was responsible.

When complainant offered to rescind the contract as to the 20 acres, defendant offered to rescind it *in toto,* and give him back his money, with interest, that he had advanced on the purchase, but this he declined to do. If complainant was not willing to perform the contract as he had made it, in all conscience he ought to be willing to a rescission of the entire contract, upon equitable terms. He will not be permitted to come into a court of equity and insist he have the best part of the contract executed in his favor, and rescinded as to that part which is thought to be unprofitable. Previous to making the sale, defendant had expressly refused to sell complainant one tract unless he could sell both. The smaller lot lies near East St. Louis, and is valuable for subdivision; but the 20-acre tract is situated beyond, and. if separated from the smaller one, would be depreciated in value. Although described as two lots, they really constitute but one tract.

No principle of law is better settled than that a party can not rescind an entire contract in part, retaining that which is valuable to him, and compelling the other party to take back that which may prove to be of no advantage. He can not affirm the contract as to a part and avoid the residue; but if he rescinds at all, he must rescind *in toto. Buchenan* v. *Horney,* 12 Ill. 336; *Brown* v. *Shuler,* 41 Ill. 174; *Ryan* v. *Brandt,* 42 Ill. 85.

Should the vendee, in this case, be permitted to rescind the contract as to the 20 acres, and affirm it as to the other and more valuable tract, it would be to make a new contract for the parties, and one that the owner of the property expressly

refused to make. This, we have neither the power nor incli-
nation to do. If there has been a failure of the title to any
portion of the property included within the contract, the ven-
dee is at liberty to refuse to perform it; but it would be
inequitable to permit him to have the advantage of all that
is valuable in the contract, and avoid the residue. By his
cross-bill, defendant offers him the privilege to rescind the
entire contract, and tenders him back the money advanced
on the purchase, with interest. This is all, in good con-
science, that he can ask, or ought to have.

But complainant insists he has donated a portion of the
land for educational purposes, and made sale of a small lot,
and hence, can not rescind as to the whole purchase. Defend-
ant, in his cross-bill, offers to confirm the conveyances, only
claiming credit for the donation, if there was one.

We have not deemed it necessary to express an opinion
upon the question whether defendant, under the third item
of the will, could sell his right to the occupancy of the premi-
ses, only accounting to the heirs, if there are any, for the
annual rents, for the reason that, under the circumstances of
this case, if complainant is permitted to rescind the contract
at all, he must rescind *in toto.* His money advanced on the
purchase has been tendered back to him, with interest, and
he ought then to have made his election whether he would
perform the contract as he had made it. There is not a
shadow of equity in the claim put forth by complainant. He
will neither exercise his privilege to rescind the contract, nor
perform it. Defendant has been guilty of no fraud. He dis-
closed the source of his title just what it was. It may or it
may not be good. Complainant entered into possession of
the premises under the contract of purchase, and that posses-
sory right has never been disturbed, and, for aught that
appears, may never be. No one claims, or has asserted, para-
mount title. With as much knowledge of the title as defend-
ant had, complainant chose to make the purchase, relying on
the covenants of warranty as security. There is no suggestion

the warranty is not good, in case complainant should ever be disturbed in the possession of the property. He never bargained for the fee simple title, but only for the remainder of the leasehold estate. It does not appear but he may always be able to enjoy the fruits of his purchase.

The decree dismissing the original bill was eminently proper. No error has been assigned on dismissing the crossbill of defendant.

The decree will be affirmed.

*Decree affirmed.*