## CHARLES W. RIGDON

## v.

## ALFRED F. WALCOTT.

*Fraud —Sales—Corporations —Stockholders — Contracts—Specific Performance.*

1.　A sale induced by fraud is not absolutely void, but is valid and binding if the innocent party, upon whom the fraud was perpetrated, sees fit to affirm the transaction.

2.　If the defrauded party disaffirms the transaction, he must do so *in toto* and must offer to restore the *statu quo.*

3.　If, by the conduct of the party guilty of the fraud, it has been rendered impossible for the *statu quo* to be restored, a court of equity will not deny to the innocent party the right of rescission because of such impossibility.

4.　Contracts between the controlling majority of stockholders of a corporation, in its behalf with themselves, are not sanctioned by courts of equity. Such contracts courts of equity treat as of no avail; the parties acting thereunder become entitled to receive, not the sum stipulated, but merely a fair compensation for what they have done.

5.　The right of one stockholder that all the agents of the corporation shall act, not in their own interest, nor in the interest merely of those stockholders by whose favor they hold their places, but with an eye single to the interests of the corporation, is as great as that of all the stockholders.

6.　In the case presented, this court holds, in view of the evidence, that complainant's contract with defendant was not one of which a court of equity would or could compel a specific performance, and declines to interfere with the decree for the defendant.

[Opinion filed December 7, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. KIRK HAWES, Judge, presiding.

This is an appeal from an order sustaining a demurrer and dismissing for want of equity a bill filed by appellant. The bill was to restore appellant to his rights under a written contract by him made with appellee, by the terms of which, in consideration of what he had already done, and his promise, until the completion of the same, to devote all the time, skill

and ability necessary to the procurement of an ordinance from the city and to the obtaining of the right of way for the Chicago & South Side Rapid Transit Company, appellee agreed to procure from said company a contract for the construction of its road, by the terms of which appellee should receive for such construction $7,000,000 of the bonds of such company and 74,995 full paid and non-assessable shares of stock of the par value of $100 each; and out of such bonds and stock, he, appellee, agreed he would assign to Owen P. Aldis, as trustee, to be by him held until the completion of said road and then to be delivered to appellant, one-thirtieth of all such bonds and one-fifteenth of all such stock, it being recited in such contract that said company was organized under the laws of the State of Illinois with a capital stock of 75,000 shares of $100 each, appellee having subscribed for 74,995 shares, appellant for one share and four other persons for one share each.

The bill charged that appellant fulfilled his part of the agreement, and that in the month of November, 1889, appellee represented to him that it had become necessary in order that the subscribers to said capital stock might reap any benefit therefrom, to sell a controlling interest in said company to the Chicago City Railway Company, and that the utmost appellant could obtain for the stock and bonds he had acquired under said agreement was $40,000; that every other person having any interest in said rapid transit company had consented to receive a sum which bore a far less proportion to the stock and bonds of said transit company to which they were entitled, than the said sum of $40,000 did to the stock and bonds to which appellant was entitled; that believing such representations to be true, and relying upon the same, he entered into an agreement to assign his contract for the sum of $40,000; that afterward, becoming fearful that the representations were untrue, he filed his bill and obtained an injunction restraining one W. W. Gurley from disposing of or assigning the said contract.

That thereafter said Gurley, at the instigation of appellee, and appellee, renewed said representations and assured him

that they were true, whereupon he dismissed his said bill and consented to receive said $40,000; that he had no means of ascertaining as to the truth of said representations of appellee and his agents; that each and all of the said representations were false and known by appellee to be false and were made by him for the purpose of deceiving him, appellant, and to induce him to assign his said contract as he did.

That before he made said representations appellee had arranged to dispose of, and after appellant assigned his said contract with appellee, sold to the Chicago City Railway Company, a controlling interest in said rapid transit company, for a price which, as he is informed and believes, would have entitled him, appellant, to have received for the stock and bonds which, under his agreement with appellee he was to have, not less than the sum of $500,000.

That as he is informed and believes appellee still retains a large number of shares of the said transit company and will become entitled to, under the contract for the construction of the railroad of said company, a large number of bonds of said company, and he asks that the assignment by him, appellant, made of his said contract, may be set aside, and that appellee may be ordered to fulfill his said agreement with him, appellant, and be enjoined from disposing of any stock or bonds to which, under said agreement, he, appellant, is entitled.

The bill was afterward amended by the insertion of the statement that the complainant has expended a considerable portion of the $40,000 by him received in the payment of indebtedness before that by him incurred in the procuring of the right of way for the said transit company, and that he is a person of limited means and could not raise the sum of $40,000 to tender to appellee; that under the agreement between him and appellee, there is due to him, complainant, cash, stock and bonds of a value greatly in excess of $40,000; that the cancellation of the assignment of said contract by complainant and the delivery to him of the said cash, stock and bonds should be simultaneous; and he tenders to appellee out of the same the said $40,000.

Mr. HUGH L. BURNHAM, for appellant.

Messrs. GURLEY & WOOD, for appellee.

WATERMAN, P. J. It is strenuously urged that it was not necessary to make any tender of the $40,000 received by appellant other than that contained in the amended bill.

A sale induced by fraud is not absolutely void; if it were each party might disregard it. Such sale is valid and binding if the innocent party, upon whom the fraud was perpetrated, sees fit to affirm the transaction. Changed conditions may, before he discovers the fraud, have made the dealing advantageous to him, and it be for his interest to maintain it; whether this be so or not, he and he alone can avoid the sale. It being therefore voidable only, if the defrauded party disaffirms the transaction, he must do so *in toto* and must offer to restore the *statu quo*. Bowen v. Schuler, 41 Ill. 192; Lovingston v. Short, 77 Ill. 587; Preston v. Spaulding, 120 Ill. 208–227. If by the conduct of the party guilty of the fraud it has been rendered impossible for the *statu quo* to be restored, a court of equity would not deny to the innocent party the right of rescission because of such impossibility. Preston v. Spaulding, *supra*.

In the present case, appellant, without showing that it is impossible for appellee to give to him or deposit with Aldis in trust the stock and bonds appellant claims, makes only a conditional offer to pay back the $40,000 he has received. He alleges that in case he is restored to his right under his contract there will be due to him from appellee cash, stocks and bonds far in excess of the sum of $40,000, and out of this he offers to restore the $40,000.

What the amount of cash, stocks or bonds respectively will be, is not stated; and the allegation that the value of all is far in excess of $40,000 is a mere conjectural opinion. No facts are stated from which any conclusion can be reached as to what amount of stocks or bonds complainant will be entitled to, nor is there any allegation as to what the value of either the bonds or stocks of said transit company now is. If upon a hearing the value of the cash, bonds and stocks going to

complainant should be only $30,000, then the offer is merely to restore $30,000.

Appellant, when he filed his bill, was in possession of the facts, concealed, as he alleges, from him when he assigned his contract; he could then have confirmed his assignment or rescinded it, but if he rescinded he must do so *in toto*. Instead of this he offers to give back an amount equal to the value of what shall be restored to him.

If he had offered to restore the $40,000 upon a return to him of what he was entitled under his contract, appellee might at once have accepted such offer; and appellant might have found that his stock and bonds were of far less value than $40,000; he seems to have been afraid of such contingency and carefully avoided a tender which might have led to such result. It does not clearly appear from the bill that appellant has ever became entitled to receive from appellee either stock or bonds. True, he says that he was and is, but that is a mere conclusion; facts showing him to be so entitled should have been set forth.

The contract was that appellee should make a contract for the construction of a railroad under which he, appellee, would receive over $14,000,000 in stock and bonds, and of these appellant was to have a definite portion. There is no allegation that appellee ever made or was able to make any such contract.

It is argued that as appellee held a large majority of the stock of the company, he could make or have made for the company, the contract with himself he agreed with appellant should be made; and that if he neglected to have made with himself such contract he failed to discharge his obligations to appellant, and a court of equity will treat the matter as if he had done what he agreed to.

It may be the case that the controlling majority of stockholders of corporations do often direct contracts to be made on its behalf with themselves, but they do not so do under the sanction of courts of equity. Such contracts courts of equity treat as of no avail; the party acting thereunder becomes entitled to receive, not the sum stipulated, but

merely a fair compensation for what he has done. Redfield on Railways, Sec. 140; Morawetz on Corporations, Sec. 516, 517, 518, 519; Wardell v. Union Pac. R. R., 103 U. S. 651, 658; Hoyle v. Platsburgh R. R., 54 N. Y. 314–328; Bliss v. Matteson, 45 N. Y. 22–26; Gardner v. Butter, 30 N. J. 702, 721, 724.

It is true that appellee held all but a very few shares, but the right of one stockholder that all the agents of the corporation shall act, not in their own interest or in the interests merely of those stockholders by whose favor they hold their places, but with an eye single to the interests of the corporation, is as great as that of all the stockholders.

Appellant's contract with appellee was not one which a court of equity would or could compel a specific performance of.

The demurrer was properly sustained and the decree of the Superior Court dismissing the bill must be affirmed.

*Decree affirmed.*